COMMERCIAL UNION INSURANCE COMPANY, Appellant (Defendant),

v.

James L. STAMPER, Appellee (Plaintiff).

No. 86–153.

Supreme Court of Wyoming.

Feb. 11, 1987.

J.N. Murdock of Reeves & Murdock, Casper, for appellant (defendant).

Richard H. Peek, Casper, for appellee (plaintiff).

Before BROWN, C.J.,* THOMAS, URBIGKIT and MACY, JJ., and GUTHRIE, J., Retired.

URBIGKIT, Justice.

This appeal presents the question whether an insured, under a *single* automobile

* Chief Justice at time of oral argument.

insurance policy encompassing several vehicles may "stack" or "pyramid" uninsured-motorists and medical-payment provisions for recovery of injury and medical expenses sustained in an accident involving one of the covered vehicles.

The plaintiff-appellee, James L. Stamper, was involved in an automobile collision with an uninsured motorist, and sustained bodily injuries. At the time, he had an automobile insurance policy issued to him as named insured by the defendant-appellant, Commercial Union Insurance Company (the insurer), covering three vehicles with uninsured-motorists and medical-payments provisions with the face amount of $20,000 and $500, respectively. The trial judge held for Stamper by granting summary judgment, and determined the recovery to be the aggregate sum of coverage for all vehicles of $60,000 uninsured-motorists liability and $1,500 for medical benefits. This appeal is from that judgment.

The stated issues are:

I. Does public policy of Wyoming prohibit the limitation of damages that will be paid for any one accident under a single insurance policy pursuant to its uninsured-motorists and medical-payments provisions so that a policy provision to the contrary is void?

II. Did the trial court err in finding as a matter of law that the insurance policy was ambiguous regarding total coverage, and by granting summary judgment to the insured by stacking or aggregating the policy coverage for each vehicle to achieve the totals of $60,000 and $1,500?

The insurer argues that Stamper should not have the benefit of coverage as to all three vehicles but can recover only the amount provided for the single vehicle which was occupied at the time of the occurrence—or $20,000 for uninsured-motorists coverage and $500 for medical payments.

We agree, and will reverse.

### Summary Judgment

The standard of review for summary judgment appeals has been well established by this court.

" 'When reviewing a summary judgment on appeal, we review the judgment in the same light as the district court, using the same information. *Randolph v. Gilpatrick Construction Company, Inc.,* Wyo., 702 P.2d 142 (1985); and *Lane Company v. Busch Development, Inc.,* Wyo., 662 P.2d 419 (1983). A party moving for summary judgment has the burden of proving the nonexistence of a genuine issue of material fact. *Dudley v. East Ridge Development Company,* Wyo., 694 P.2d 113 (1985). Material fact has been defined as one which, if proved, would have the effect of establishing or refuting an essential element of the cause of action or defense asserted by the parties. *Samuel Mares Post No. 8, American Legion, Department of Wyoming v. Board of County Commissioners of the County of Converse,* Wyo., 697 P.2d 1040 (1985). Upon examination of a summary judgment, we view the record from the vantage point most favorable to the party opposing the motion, giving him all favorable inferences which may be drawn from the facts. *Bancroft v. Jagusch,* Wyo., 611 P.2d 819 (1980).' *Garner v. Hickman,* [Wyo.] 709 P.2d 407, 410 (1985)." *Schutkowski v. Carey,* Wyo., 725 P.2d 1057, 1059 (1986).

The litigants here agree on the essential facts, so that separate inquiry into the facts is not necessary in application of the law for appeal disposition.

In applying the applicable stage analysis of a summary-judgment situation as enunciated in *Cordova v. Gosar,* Wyo., 719 P.2d 625 (1986), we find that this case encompasses a substantive legal issue disposition or a Stage Five summary judgment.

*"Stage Five:* legal issue disposition. Resolution in many cases is accommodated at this time by a determination that the issue between the parties is not factual in nature, but rather involves a contested issue of law which consequently will decide the case. This stage resolution involves *interpretation of unambiguous contracts,* suits on rationally un-

contested promissory notes, *and a variant kind of circumstance where the facts are not in dispute but the legal principles are otherwise at issue. Ogle v. Caterpillar Tractor*, Wyo., 716 P.2d 334 (1986); *City of Casper v. International Association of Firefighters*, Wyo., 713 P.2d 1187 (1986); *Duffy v. Brown*, Wyo., 708 P.2d 433 (1985); *Sannerud v. First National Bank of Sheridan*, Wyo., 708 P.2d 1236 (1985)." (Emphasis added.) 719 P.2d at 636.

With the parties only disagreeing on the interpretation and scope of the insurance agreement, we have for disposition questions of law involving the application of public policy, and the interpretation and construction of the contract. *Western Utilities Contractors, Inc. v. City of Casper*, Wyo., 731 P.2d 24 (1986); *Burk v. Burzynski*, Wyo., 672 P.2d 419 (1983); *Hursh Agency, Inc. v. Wigwam Homes, Inc.*, Wyo., 664 P.2d 27 (1983); *Rouse v. Munroe*, Wyo., 658 P.2d 74 (1983); *Tate v. Mountain States Telephone and Telegraph Co.*, Wyo., 647 P.2d 58 (1982); *Busch Development, Inc. v. City of Cheyenne*, Wyo., 645 P.2d 65 (1982); and *Amoco Production Company v. Stauffer Chemical Company of Wyoming*, Wyo., 612 P.2d 463 (1980).

### Public Policy

In delineating public policy, the key is found in our identifying and giving force and effect to that public policy of the State of Wyoming announced through applicable statutes or controlling precedent. *Allstate Insurance Company v. Wyoming Insurance Department*, Wyo., 672 P.2d 810, 815 (1983). A statutory review is necessary, since, although "parties have the right to embody in their insurance contract whatever lawful terms they wish," *Alm v. Hartford Fire Insurance Company*, Wyo., 369 P.2d 216, 217 (1962), citing *Rosenblum v. Sun Life Assurance Company of Canada*, 51 Wyo. 195, 65 P.2d 399, 109 A.L.R. 911 (1937), "the insurance agreement must not conflict with pertinent statutes or public policy," *Allstate Insurance Company v. Wyoming Insurance Department*, supra

672 P.2d at 816, citing *McKay v. Equitable Life Assurance Society of the United States*, Wyo., 421 P.2d 166 (1966), and *Cincinnati Insurance Company v. Mallon*, Ind.App., 409 N.E.2d 1100 (1980).

The Uninsured Motor Vehicle Coverage Act (§§ 31–10–101 through 31–10–104, W.S. 1977) provides in § 31–10–101 that:

"No policy insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any natural person arising out of the ownership, maintenance or use of a motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto, in limits for bodily injury or death as approved by W.S. 31–9–102(a)(x), under provisions approved by the insurance commissioner for the protection of persons insured thereunder or legally entitled to recover damages from owners or operators or uninsured motor vehicles because of bodily injury, sickness or disease, including death resulting therefrom. *The named insured may reject the coverage.* Unless the named insured requests the coverage in writing, the coverage need not be provided in or supplemental to a renewal policy where the named insured had rejected the coverage in connection with the policy previously issued to him by the same insurer." (Emphasis added.)

Furthermore, § 31–9–102(a)(x), W.S.1977, states:

"(x) 'Proof of financial responsibility' means proof of ability to respond in damages for liability, on account of accidents occurring subsequent to the effective date of said proof, arising out of the ownership, maintenance or use of a motor vehicle, in the amount of ten thousand dollars ($10,000.00) because of bodily injury to or death of one (1) person in any one (1) accident, and subject to said limit for one (1) person, in the amount of twenty thousand dollars dollars ($20,-000.00) because of bodily injury to or

death of two (2) or more persons in any one (1) accident, and in the amount of five thousand dollars ($5,000.00) because of injury to or destruction of property of others in any one (1) accident." [1]

" * * * [T]he words employed by the legislature in announcing the law must be given their plain and ordinary meaning. *McArtor v. State*, Wyo., 699 P.2d 288, 292 (1985); *Hurst v. State*, Wyo., 698 P.2d 1130 (1985)." *Scadden v. State*, Wyo., 732 P.2d 1036, 1042 (1987).

■ Taking the plain meaning of the words used in reading and interpreting the applicable statutes as promulgated and enacted by the Wyoming legislature, it is apparent that the purpose of uninsured-motorists insurance coverage is to provide to innocent automobile accident victims an *opportunity* to procure a means of insulating themselves from damages incurred as a result of unfortunate and far too frequently occurring automobile collisions with uninsured motorists. Under Wyoming law, the purchase of uninsured-motorists insurance is not mandatory, but is a matter of discretion for the individual. The legislature intended that the insured be given the opportunity of subscribing to such coverage, and set a minimum coverage, allowing the insured to elect that minimum or any greater amount.

"[T]he uninsured motor vehicles act is calculated to protect a restricted category of drivers—namely, those insured owners who are involved in accidents with drivers who do not carry insurance. "Compulsory insurance, on the other hand, is intended to be but one of the conditions for driving upon the highways of the state and its purpose is to benefit the motoring public as a whole (see 7 Am Jur 2d, Automobile Insurance § 20, p. 466, infra), not just a restricted class of persons who have shown themselves to be 'bad drivers' or the limited class of insured motorists who are involved in accidents with those who do not carry insurance.

"Therefore, while the fallout benefits of Wyoming's financial responsibility law and the uninsured motor vehicles act may be similar to those of the compulsory insurance statute, i.e., the protection of various classes of motorists from drivers on the highways of the state, it is clear that the uninsured motor vehicles act and the financial responsibility law are intended to 'benefit' a very limited category of drivers, while the compulsory insurance statute, on the other hand, is intended to protect *all* motorists who drive upon the highways of the state. It can therefore be seen that the avowed legislative purpose of the two acts is not the same and the classes of those who are intended to be benefited both in kind and in numbers are different." *Allstate Insurance Company v. Wyoming Insurance Department*, 672 P.2d at 818.

At the date of the accident the policy met the statutory requirement as a minimum coverage, and there is no stated statutory public policy requiring aggregating which would vitiate clear insurance policy terms. Ample supporting authority exists. E.g., *Kracl v. Aetna Casualty and Surety Co.*, 220 Neb. 869, 374 N.W.2d 40 (1985). See also *Martin v. Christensen*, 22 Utah 2d 415, 454 P.2d 294 (1969).

The cases are many and the results varied, as is demonstrated by the comprehensive annotations in 25 A.L.R.4th 6 (uninsured motorists), and 29 A.L.R.4th 49 (medical payments). Ascertainable confusion and dispute among the authorities, although in some cases attributable to particular statutes, can be related philosophically to result-oriented applications which create coverage that was not provided by the insurance agreement from which benefits are to be derived. In general, we do not find any logical or statutory basis for distinguishing the coverage available to the named insured from other insureds un-

---

1. Pursuant to Ch. 234, § 2, S.L. of Wyoming 1985, the amounts have been raised to $25,000, $50,000, and $20,000, respectively.

der the extended-coverage provisions of automobile insurance policies. Each permissive user should be equally insured in coverage amount. *Lyon v. Hartford Accident and Indemnity Co.*, 25 Utah 2d 311, 480 P.2d 739 (1971); *Kennedy v. American Hardware Mutual Insurance Co.*, 255 Or. 425, 467 P.2d 963 (1970).

The insured argues, however, that established Wyoming precedent, *Ramsour v. Grange Insurance Association*, Wyo., 541 P.2d 35 (1975), dictates that any limitation-of-damages provision with regard to uninsured-motorists insurance must be stricken as against public policy, and thereby contends that uninsured-motorists insurance benefits must be allowed to be stacked or to be aggregated. The position adopted in oral argument by appellee was that stacking occurred only in benefit of the named insured, so that the dilemma of extreme coverages for fleet policies would not be created, as might be the case with state employees, for example, where an aggregated coverage of hundreds of times the stated amount would otherwise result. See *Cunningham v. Insurance Company of North America*, 213 Va. 72, 189 S.E.2d 832 (1972).

While we do not specifically overrule the decision or reasoning used in *Ramsour v. Grange Insurance Association*, supra, we do not find that case to be controlling here. Any assumption that Ramsour stands for the broad contention of public policy prohibiting insurance policy limitations in uninsured-motorists or medical-benefits provisions, or that these coverages must be allowed to be stacked *in all cases*, is unjustified. A case in which there were both separate policies and a comparison fleet damage issue is *Nationwide Mutual Insurance Co. v. Howard*, 288 S.C. 5, 339 S.E.2d 501 (1985). See also *Insurance Law*, 38 S.C.L.Rev. 133 at 140 (1986).

■ The decision in *Ramsour* is based on narrow grounds and will not now be extended. The facts in *Ramsour* were different, involving aggregation of benefits found in separate insurance policies, whereas this case involves a single insurance policy. See *Cunningham v. Western Casualty & Surety Co.*, 90 S.D. 530, 243 N.W.2d 172 (1976). We do not find, either by statutory provision or compelling precedent, that public policy in Wyoming requires uninsured-motorists or medical-payments insurance benefits in one policy to be aggregated in all cases where an insured has an unfortunate automobile accident with an uninsured motorist. If the legislature intends a contrary result, it can supply the requirement by express statute, showing its clear intent, and recognizing the underwriting principle and costs which result. *St. Paul Mercury Insurance Co. v. Andrews*, N.D., 321 N.W.2d 483, 29 A.L. R.4th 1 (1982).

"We acknowledge that the legislature, not the judiciary, ought to make the decision and, accordingly, if we have failed in our effort to detect legislative intent in this highly specialized area of insurance, the legislature is invited to reevaluate the statute and the consequences and to clearly spell out its intent, as may be dictated by the best interest of the people of this state." 321 N.W.2d at 486.

In adhering to the general rule accepted in this state, we recognize that

" * * * freedom on the part of insurance companies to include any desired provision in insurance contracts is limited to that which is *not prohibited by statute or public policy. McKinney v. McKinney*, 59 Wyo. 204, 135 P.2d 940 (1943); *Ball v. Ball*, 73 Wyo. 29, 269 P.2d 302 (1954); *Oldman v. Bartshe*, Wyo., 480 P.2d 99 (1971); and *Vosler v. Peterson*, Wyo., 480 P.2d 393 (1971)." *Allstate Insurance Company v. Wyoming Insurance Department*, 672 P.2d at 823–824.

Since the insurance agreement in this case neither circumvented pertinent Wyoming statutes nor otherwise established public policy, we will defer to the language of the insurance policy itself to establish the existence of any limitations of liability.

*Insurance Policy Interpretation*

■ General principles of construction will be followed when interpreting condi-

tions of an insurance agreement. Basic tenets stated in *McKay v. Equitable Life Assurance Society of the United States,* supra, 421 P.2d at 168, and applied in controversies involving insurance policies in the State of Wyoming are:

1. "[T]he words used will be given their common and ordinary meaning. 13 Appleman, Insurance Law and Practice, § 7402 (1943). * * * Neither will the language be 'tortured' in order to create an ambiguity. *Malanga v. Royal Indemnity Company,* 4 Ariz.App. 150, 418 P.2d 396, 399 [1966]; 13 Appleman, Insurance Law and Practice, § 7384 (1943)."

2. "The intention of the parties is the primary consideration and is to be ascertained, if possible, from the language employed in the policy, viewed in the light of what the parties must reasonably have intended. *Wilson v. Hawkeye Casualty Co.,* [67 Wyo. 141], 215 P.2d [867] at 873–875 [1950]."

3. "Such [insurance policy] contracts should not be so strictly construed as to thwart the general object of the insurance. *Miles v. Continental Casualty Company,* Wyo., 386 P.2d 720, 722 [1963]."

" * * * [T]he parties have the right to employ whatever lawful terms they wish and courts will not rewrite them. *Alm v. Hartford Fire Insurance Company,* Wyo., 369 P.2d 216, 217 [1962]."

4. "Absent ambiguity, there is no room for construction and the policy will be enforced according to its terms. *Addison v. Aetna Life Insurance Company,* Wyo., 358 P.2d 948, 950 [1961]."

5. " * * * [W]here such [insurance policy] contracts are so drawn as to be ambiguous and uncertain and to require construction, the contract will be construed liberally in favor of the insured and strictly against the insurer. Also, if the contract is fairly susceptible of two constructions, the one favorable to the insured will be adopted. [*Wilson v. Hawkeye Casualty Co.,* supra 215 P.2d at 867.]"

Stamper contends that "since the policy in question is ambiguous, when read in light of the declarations section and the endorsement page specifying the vehicles covered, the types of coverage, and the charges for said coverage, it should be resolved against its maker and construed in favor of coverage." Similarly, the trial court stated in its decision letter:

"While the language of the clause is clear on its face as to what is intended, when this clause is read together with the declaration sheet it becomes unclear and ambiguous. * * * Since the policy is ambiguous, the 'limits of liability' clause is ineffective and 'stacking' under the policy shall be permitted."

We do not agree.

The insurance policy, including the declaration sheet and endorsement sheet, when read as a whole, cannot be construed as ambiguous. Giving the words used their common and ordinary meaning, it is clear that the limitation on damages comprised in both the declaration sheet and endorsement sheet clearly limits coverage under the uninsured-motorists provision to $20,000, and under the medical-payments provision to $500. *Holland v. Hawkeye Security Insurance Co.,* Ia., 230 N.W.2d 517 (1975).

The uninsured-motorists and medical-payments insurance endorsement sheets respectively state:

"Regardless of the number of covered autos, insureds, claims made or vehicles involved in the accident, the most we will pay for all damages resulting from any one accident is the limit of UNINSURED MOTORISTS INSURANCE shown in the *declarations.*" (Emphasis added.)

"Regardless of the number of covered autos, insureds, claims made or vehicles involved in the accident, the most we will pay for bodily injury for each insured injured in any one accident is the limit of AUTO MEDICAL PAYMENTS shown in the *declarations.*" (Emphasis added.)

The declarations sheet provides in graph form under the headings "LIMIT—THE MOST WE WILL PAY FOR ANY ONE

ACCIDENT OR LOSS" and "UNINSURED MOTORISTS INSURANCE"—"$20,000," and under "LIMIT—THE MOST WE WILL PAY FOR ANY ONE ACCIDENT OR LOSS" and "AUTO MEDICAL PAYMENTS INSURANCE"—"$500."

■ A reasoned construction reveals that the parties intended that both the endorsement sheets and declaration sheets would conjunctively make up the total policy, and that, in the terms of the specific provision, the amount of coverage on each accident would be limited to $20,000 uninsured-motorist coverages and $500 medical-payments coverage. See *Hansen v. Liberty Mutual Fire Insurance Co.*, 116 Ga. App. 528, 157 S.E.2d 768 (1967); *Nissenbaum v. Liberty Mutual Insurance*, 16 Mass.App. 996, 454 N.E.2d 922 (1983); *Eckert v. Green Mountain Insurance Co.*, 118 N.H. 701, 394 A.2d 55 (1978); *Sisson v. Travelers Insurance Companies*, 94 A.D.2d 953, 464 N.Y.S.2d 77 (1983).

■ Stamper argues in the alternative that, because he made separate premium payments for each automobile covered under each of the disputed provisions, each automobile paid for constitutes a separate policy, and therefore stacking should be allowed. We find the argument to be unpersuasive, as have other courts. *Hansen v. Liberty Mutual Fire Insurance Co.*, supra; *Lumbermens Mutual Casualty Co. v. Decenzo*, 18 Mass.App. 973, 469 N.E.2d 1316 (1984), aff'd 396 Mass. 692, 488 N.E.2d 405 (1986); *Castle v. United Pacific Insurance Group*, 242 Or. 44, 448 P.2d 357 (1968).

The declarations sheet shows a total premium of $16 for uninsured-motorists insurance and $46 for medical-payments insurance. Furthermore, while an attached Fleet Schedule breaks down the premium to be paid by each vehicle under each provision, a total under each provision is arrived at in computing the total policy payments. Neither the payment provisions nor the language of the insurance agreement demonstrates anything but a single and individual policy. Likewise, no discernable difference is found between the uninsured-motorists

provision and the medical-payments provision. See 25 A.L.R.4th, supra at 6, and 29 A.L.R.4th, supra at 49. Cf. *Bogart v. Twin City Fire Insurance Company*, 473 F.2d 619 (5th Cir.1973).

In finding that one single and individual policy exists, and that the common and ordinary meaning of the words used by the parties evidences their intent to limit liability coverage to $20,000 and $500 under the uninsured-motorists and medical-payments provisions, we then discern no ambiguity in the insurance policy. "Absent ambiguity, there is no room for construction and the policy will be enforced according to its terms. *Addison v. Aetna Life Insurance Company*, [supra]." *McKay v. Equitable Life Assurance Society of the United States*, supra, 421 P.2d at 168.

Representative cases denying stacking include *State Farm Mutual Automobile Insurance Co. v. Williams*, 123 Ariz. 455, 600 P.2d 759 (1979); *M.F.A. Mutual Insurance Co. v. Wallace*, 245 Ark. 230, 431 S.W.2d 742 (1968); *Rudder v. Farmers Insurance Exchange*, 107 Cal.App.3d 158, 165 Cal.Rptr. 562, 21 A.L.R.4th 205 (1980); *McLellan v. State Farm Mutual Automobile Insurance Co.*, Fla.App., 366 So.2d 811 (1979); *Doerpinghaus v. Allstate Insurance Co.*, 124 Ga.App. 627, 185 S.E.2d 615 (1971); *Jeffries v. Stewart*, 159 Ind.App. 701, 309 N.E.2d 448 (1974); *Nall v. State Farm Mutual Automobile Insurance Co.*, La., 406 So.2d 216 (1981); *Trimble v. Safeco Insurance Co. of America*, 96 Mich. App. 291, 292 N.W.2d 193 (1980); *Pettid v. Edwards*, 195 Neb. 713, 240 N.W.2d 344 (1976); *Wachovia Park & Trust Co. v. Westchester Fire Insurance Co.*, 276 N.C. 348, 172 S.E.2d 518 (1970); *Lemoi v. Nationwide Mutual Insurance Co.*, R.I., 453 A.2d 758 (1982); *Nationwide Mutual Insurance Co. v. Bair*, 257 S.C. 551, 186 S.E.2d 410 (1972); and *Goodville Mutual Casualty Co. v. Borror*, 221 Va. 967, 275 S.E.2d 625 (1981).

### Conclusion

In this case, the right to aggregate coverages is neither required by ascertainable

public-policy concerns nor permitted by the insurance policy by its clearly stated terms. We find that the lower court erred in its decision granting summary judgment in favor of appellee, and, recognizing this court's precedents that summary judgment is proper where the language of an agreement is plain and unambiguous, *Hensley v. Williams*, Wyo., 726 P.2d 90 (1986); and *Cordova v. Gosar*, supra, hold that summary judgment for appellant should be granted.

Reversed and remanded.