993 F.2d 1551
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 FARMERS INSURANCE EXCHANGE, a Foreign Insurance Exchange,
Plaintiff-Appellee,
v.
Hans WILLIAMS, Reed E. Williams and Shon P. Williams,
Defendants-Appellants.
 No. 92-8052.
 United States Court of Appeals, Tenth Circuit.
 May 10, 1993.
 
 Before MOORE and BRORBY, Circuit Judges, and VAN BEBBER,* District Judge.
 ORDER AND JUDGMENT**
 BRORBY, Circuit Judge.
 
 
 1
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The case is therefore ordered submitted without oral argument.
 
 
 2
 Reed Williams and his two sons, Hans and Shon, defendants-appellants, appeal the grant of summary judgment by the district court in favor of plaintiff-appellee Farmers Insurance Exchange. Defendants argue that the district court erred in refusing to allow the stacking of coverages for underinsured motorist benefits under their several separate Farmers policies; that the doctrine of reasonable expectations requires stacking; and that these questions should have been certified to the Wyoming Supreme Court. Because we agree with the district court's analysis of the questions of law presented by this case, we affirm.
 
 
 3
 Defendant Hans Williams was injured in an automobile accident while he was driving his aunt's car. The accident was caused by the negligence of the other driver, who was insured under a policy with another nonparty insurance company. That company has paid Hans $25,000, the policy limit for bodily injury. Reed Williams, his son Shon, and Hans' aunt had, among them, eight separate auto insurance policies with Farmers. At the time of this appeal, Farmers had paid Hans a total of $114,000 under some of those policies; defendants contend that Hans should have received $373,000, the total limits of all coverages in all Farmers policies.
 
 
 4
 The district court rejected defendants' claim, holding that (1) because the policy language was unambiguous, the doctrine of reasonable expectations would not apply, and (2) neither Wyoming case law, public policy, nor statutes require the stacking of underinsured motorist coverages under the facts of this case. The district court also refused to certify any of these questions to the Wyoming Supreme Court.
 
 
 5
 We review the grant of summary judgment de novo, applying the same standards as did the district court. MacDonald v. Eastern Wyo. Mental Health Ctr., 941 F.2d 1115, 1117 (10th Cir.1991). Since this case was decided by the district court, the Wyoming Supreme Court has issued an opinion confirming the correctness of the district court's order. In Wyoming ex rel. Farmers Insurance Exchange v. District Court of the Ninth Judicial District, No. 92-80, 1993 WL 2009, at * 3 (Wyo. Jan. 8, 1993) (to be reported at 844 P.2d 1099), the court examined the exact language at issue here and found it to be unambiguous. The court, therefore, refused to employ the doctrine of reasonable expectations. Id.
 
 
 6
 With regard to the issue of stacking underinsured motorist coverages, we affirm for substantially the reasons stated by the district court in its well written order attached hereto. The policies clearly prohibit stacking,[1] and Wyoming law does not require it. Ramsour v. Grange Insurance Association, 541 P.2d 35 (Wyo.1975), which defendants argue should require the stacking of underinsured motorist coverages, has been limited by the Wyoming Supreme Court. See Commercial Union Ins. Co. v. Stamper, 732 P.2d 534, 538 (Wyo.1987) ("Any assumption that Ramsour stands for the broad contention of public policy prohibiting insurance policy limitations in uninsured-motorists or medical-benefits provisions, or that these coverages must be allowed to be stacked in all cases, is unjustified."). Thus the limitation on stacking contained in these policies is valid and enforceable. The district court was also correct to refuse certification, a procedure inappropriate where the legal question is neither novel nor involves application of unsettled state law. See Allstate Ins. Co. v. Brown, 920 F.2d 664, 667 (10th Cir.1990).
 
 
 7
 The judgment of the United States District Court for the District of Wyoming is AFFIRMED.
 
 
 8
 IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF WYOMING
 
 
 9
 FARMERS INSURANCE EXCHANGE, a Foreign Insurance Exchange, Plaintiff,
 
 
 10
 v.
 
 
 11
 HANS WILLIAMS, REED E. WILLIAMS, and SHON P. WILLIAMS, Defendants.
 
 
 12
 Docket No. 92-CV-0034-J.
 
 
 13
 ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
 
 
 14
 ALAN B. JOHNSON, District Judge.
 
 
 15
 This matter came before the Court on the parties' June 15, 1992 cross-motions for summary judgment. Hearing was held on the motions on July 1, 1992. Having carefully considered the arguments of counsel and the pleadings on file, and being fully advised in the premises, the Court FINDS and ORDERS as follows:
 
 Background
 
 16
 The parties have stipulated to many of the facts which are as follows. Farmers Insurance Exchange [Farmers] is an inter-company exchange, organized under the laws of the State of California. Farmers Insurance Exchange is authorized to conduct business as an insurance company in the State of Wyoming. Hans Williams is the son of Reed Williams and the brother of Shon Williams. At all relevant times, Hans Williams, Reed Williams and Shon Williams resided at the Williams home, located at 867 Lane 12, Lovell, Wyoming 83431.
 
 
 17
 On August 23, 1989, Reed Williams had five policies of automobile insurance in force and effect. These policies had been issued by Farmers. They are identified as Policy No.: 21-6652-57-62, Ex. A; Policy No.: 21-01047-66-71, Ex. B; Policy No.: 21-4667-52-86, Ex. C.; Policy No.: 21-11685-57-11, Ex. D.; Policy No.: 21-11685-57-12, Ex. E. On August 23, 1989, Shon Williams had two policies of automobile insurance in force and effect. These policies had also been issued by Farmers. They are identified as Policy No.: 21-11909-61-97, Ex. F; and Policy No.: 21-12422-71-54, Ex. G. The above policies of insurance are all separate policies for which separate premiums were paid. However, the premiums that were paid were reduced as a result of a multi-vehicle discount which applied to the above policies.
 
 
 18
 On August 23, 1989, Hans Williams was involved in an automobile accident in which he sustained certain bodily injuries. At the time of this accident, Hans Williams was driving, with permission, a vehicle belonging to Dorothy Dreger, his aunt. Hans Williams was not a resident of Dorothy Dreger's home. The vehicle belonging to Dorothy Dreger and driven by Hans Williams was also insured by Farmers under the terms of its policy number 21-11247-48-28. Ex. H.
 
 
 19
 The automobile accident of August 23, 1989, involved a collision between the vehicle driven by Hans Williams and a vehicle driven by Lee Wilkins. This accident was the proximate result of negligence on the part of Lee Wilkins. At the time of this accident, Lee Wilkins was insured under a policy of insurance issued by another insurance company. This policy of insurance provided liability coverage for bodily injury subject to policy limits of $25,000 per person and $50,000 per occurrence. Hans Williams has received payments for or on behalf of Lee Wilkins in the sum of $25,000, representing the bodily injury policy limits available under the terms of the Wilkins' policy. In return, Hans Williams executed a covenant not to execute against Lee Wilkins. Ex. I.
 
 
 20
 Following the accident in question, Hans Williams submitted claims to Farmers for medical payments coverage, for uninsured motorist benefits and for underinsured motorist benefits. Farmers has paid to or on behalf of Hans Williams the sum of $112,000. This amount includes $100,000 in underinsured motorist benefits, which have been paid under the terms of the policies identified as Exhibits D and E. This sum further includes $10,000 in medical payments coverage which has been paid under the terms of the Dreger policy, as well as $2,000 of medical payments coverage which has been paid under the terms of the policies of insurance issued to Reed and Shon Williams. Exs. A-G.
 
 
 21
 Farmers arrived at the above amounts in the following manner. All the Williams and Dreger policies, excepting Exs. D and E, had underinsured motorist coverage of $25,000. Since Wilkins had coverage of $25,000, Farmers concluded that coverage under the underinsured motorist provisions was not available for those policies. The policies at Exs. D and E, however, each had $100,000 coverage for underinsured motorists. At this point Farmers relied on a provision in the insurance policies[1] entitled "Two or More Cars Insured:"
 
 
 22
 With respect to any accident or occurrence to which this and any other auto policy issued to you by any member company of the Farmers Insurance Group of Companies applies, the total limit of liability under all the policies shall not exceed the highest applicable limit of liability under any one policy.
 
 
 23
 Accordingly, Farmers paid Hans Williams the highest applicable limit of one of the two policies--$100,000.
 
 
 24
 As to the medical payments coverage, it is apparent that Farmers relied additionally on two other provisions of the policies under Part III--Medical. The first, entitled "Limits of Liability," provides:
 
 
 25
 Regardless of the number of vehicles insured, insured persons, claims or policies, or vehicles involved in the accident, we will pay no more for medical expenses, including funeral expenses, than the limit of liability shown for this coverage in the Declarations for each person injured in any one accident. In no event shall the limit of liability for funeral expenses exceed $2,000.
 
 
 26
 The second provision, entitled "Other Insurance," provides in pertinent part:
 
 
 27
 If there is other applicable automobile medical insurance on any other policy that applies to a loss covered by this part, we will pay only our share. Our share is the proportion that our limit of liability bears to the total of all applicable limits.
 
 
 28
 The total amount of medical payments coverage for the seven Williams policies was $13,000 and the limit on the Dreger policy was $10,000. It is undisputed that the medical payments loss incurred by Hans Williams exceeded the coverage under all the policies combined. Accordingly, Farmers paid the full amount of the Dreger policy coverage and then, of the Williams policies, paid the limit of the single policy with the highest limit of liability.[2]
 
 
 29
 These payments were made by Farmers in the belief that these payments represented full and complete payment of all coverages applicable to the claims of Hans Williams.
 
 
 30
 The payments were accepted by Hans Williams with the understanding and agreement that his acceptance would not operate as a release or waiver of any claims that he might have to other additional coverage under the policies of insurance at issue in this action.
 
 
 31
 Farmers contends that the payments which it has made to or on behalf of Hans Williams have exhausted all available policy limits and represent full and complete payment of all coverage applicable to the claims of Hans Williams arising out of the August 23, 1989 accident.
 
 
 32
 Hans Williams contends that he is entitled to receive additional benefits for uninsured motorist benefits, underinsured motorist benefits and medical payments coverage under the terms of the policies. He contends that he is entitled to receive coverage for damages subject to the following limits:
 
 
 33
 Uninsured and underinsured motorist benefits: $350,000.
 
 
 34
 Medical payments coverage: $23,000.
 
 
 35
 These amounts reflect the full amount of coverage if the limits of liability of all the Williams policies, Exs. A-G, and the relevant Dreger policy, Ex. H, are added together, or "stacked."
 
 
 36
 The facts are not in dispute and the parties agree that this action is ripe for summary judgment in that the decision will be premised principally on contract construction and the law of Wyoming regarding "stacking" insurance policies.
 
 Discussion
 
 37
 Pursuant to Fed.R.Civ.P. 56(c), summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits on file, if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to summary judgment as a matter of law." The moving party has the burden of showing the absence of a genuine issue concerning any material fact. Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970). The moving party's burden may be met by identifying those portions of the record demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317 (1986). In determining whether these burdens have been met, the Court is required to examine all evidence in the light most favorable to the non-moving party. Barber v. General Electric Co., 648 F.2d 1272 (10th Cir.1981).
 
 
 38
 Once the moving party has met its initial burden, the burden shifts to the party resisting the motion. That party must "make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." Manders v. Oklahoma ex rel. Dept. of Mental Health, 875 F.2d 263, 265 (10th Cir.1989) citing Celotex, 477 U.S. at 325.
 
 
 39
 The Wyoming Supreme Court has set forth the basic tenets of insurance policy construction as follows:
 
 
 40
 1. "[T]he words used will be given their common and ordinary meaning. * * * Neither will the language be 'tortured' in order to create an ambiguity."
 
 
 41
 2. "The intention of the parties is the primary consideration and is to be ascertained, if possible, from the language employed in the policy, viewed in the light of what the parties must reasonably have intended."
 
 
 42
 3. "Such [insurance policy] contracts should not be so strictly construed as to thwart the general object of the insurance."
 
 
 43
 " * * * [T]he parties have the right to employ whatever lawful terms they wish and courts will not rewrite them."
 
 
 44
 4. "Absent ambiguity, there is no room for construction and the policy will be enforced according to its terms."
 
 
 45
 5. " * * * [W]here such [insurance policy] contracts are so drawn as to be ambiguous and uncertain and to require construction, the contract will be so construed liberally in favor of the insured and strictly against the insurer. Also, if the contract is fairly susceptible of two constructions, the one favorable to the insured will be adopted."
 
 
 46
 Commercial Union Insurance Co. v. Stamper, 732 P.2d 534, 539 (Wyo.1987) (alteration in original).
 
 
 47
 The Court will first address the issue of the uninsured and under-insured coverage. Defendants contend that all the un/underinsured policies should be stacked with the result that Hans Williams recovers $350,000. Defendants rely heavily on Ramsour v. Grange Insurance Association, 541 P.2d 35 (Wyo.1975) for their argument that insurance policies can and should be stacked. Ramsour, however, had a narrow basis for its ruling that insurance policies should be stacked and its breadth has subsequently been expressly limited. Commercial Union, 732 P.2d at 538.
 
 
 48
 Ramsour turned primarily on the statutory requirements, now codified at Wyo.Stat. §§ 31-10-101 and 31-9-102(a)(x), that an owner or operator of an automobile have liability insurance and that liability insurance policies provide uninsured motorists coverage, unless the insured rejects the coverage. Ramsour, 541 at 37 ("[t]he statute ... is controlling"); Commercial Union, 732 P.2d at 538. Given the statutory requirements, an important fact in Ramsour was that the two liability policies at issue were entirely separate: separately bought and paid for, and from different insurers. Id. If stacking had not been allowed in Ramsour, then one of the policies would have effectively not provided uninsured motorists coverage. This would be in violation of the statute and impermissible. Hence, stacking in that narrow factual setting is proper.
 
 
 49
 There is no statute requiring that automobile insurance policies provide underinsured motorists coverage. Only uninsured motorists coverage, of a certain amount determined by public policy considerations, is mandated. Of course, those persons who have a particularly valuable car which would not be covered by $25,000 or who have poor health insurance or who simply are more comfortable with higher coverage, are free to buy greater coverage. This added coverage, however, does not fall within statutory protections, just as minimum health insurance coverage or home insurance coverage does not. Thus, the grounds supporting, in fact mandating, stacking in Ramsour do not exist in this case.
 
 
 50
 Defendants raise two other theories in support of stacking. First, defendants argue that public policy, if nothing else, supports stacking of insurance policies. However, in the absence of compelling precedent or statutory provision, the Court finds that the public policy of Wyoming does not support stacking where the insurance policies do not so provide. See Commercial Union, 732 P.2d at 538. Second, defendants argue that the doctrine of reasonable expectations should be applied to this matter. They contend that if it were it would require coverage under all of the policies. The answer to that argument is clear: "A rule of construction that considers the reasonable expectations of the parties is of no assistance where the policy terms are clear and unambiguous." St. Paul Fire & Marine v. Albany County School District No. 1, 763 P.2d 1255, 1263 (Wyo.1988). The Court has found above that the policy terms are clear and unambiguous. Hence, the doctrine of reasonable expectations is inapplicable to this case.
 
 
 51
 In the absence of stacking, the Court must now interpret the contracts to determine the amount of coverage they provided by their terms. Upon review of the policies and applying the principles of insurance policy interpretation as set forth supra, it is clear to the Court that under the terms of the contracts, or policies, none of the policies, except two issued to Reed--Exs. D & E--are at issue. All the policies, excepting the above two, have $25,000 limits for un/underinsured motorists coverage. The polices define an uninsured motor vehicle as a motor vehicle which is:
 
 
 52
 a. Not insured by a bodily injury liability bond or policy at the time of the accident.
 
 
 53
 b. Insured by a bodily injury liability bond or policy at the time of the accident which provides coverage in amounts less than the limits of Uninsured Motorist Coverage shown in the Declarations.
 
 
 54
 Lee Wilkins was not uninsured; he had $25,000 in liability coverage. Therefore, neither the policies' uninsured provisions nor the statute's provisions are activated. Further, under the definition, Lee Wilkins also was not an underinsured motorist, except in respect to the two Reed Williams policies with un/underinsured motorist coverage of $100,000.
 
 
 55
 The Court notes in passing that defendant argues that because the policies address uninsured and underinsured coverage together and do not really distinguish between the two, then Ramsour 's holding as to uninsured coverage necessarily applies to underinsured coverage. No such reasoning is mandated under the terms of the policies. Clearly, if the insured is involved in an accident with someone who has no insurance, then uninsured motorist coverage is at issue, as are the associated statutes and Ramsour. If the insured is involved in an accident with someone who has insurance but not as much as the insured, then underinsured coverage is at issue, and the statutes and the express holding of Ramsour are not.
 
 
 56
 The question for the Court is whether the terms of the policy indicate that the parties agreed to stack coverage. The relevant language in the policy is clear: if you have two or more policies issued to you providing coverage, then the policy with the higher limit provides coverage and the other policy provides no coverage.
 
 
 57
 In this case, Reed Williams had two policies with $100,000 in underinsured motorist coverage (as well as the three with $25,000 coverage). Under the unambiguous and applicable provision, Farmers will pay insurance under only the one policy with the highest coverage. Here, although there are two policies with identical coverage making it impossible for one to be "highest," clearly only one of the two equally high policies must be paid. Thus, Farmers must pay $100,000, as it has.
 
 
 58
 The same reasoning as stated above in respect to un/underinsured motorist coverage applies to the issue of stacking based on Ramsour, statutes or general public policy in the context of the medical benefits coverage. No statute requires minimum coverage or any coverage for medical benefits insurance. Stacking simply is not mandated by Ramsour. Thus, the Court must interpret the contract to determine whether payment was proper under its terms.
 
 
 59
 The "Limit of Liability" provision, supra, merely states that the particular policy will pay no more than the amount stated in the Declarations. The "Other Insurance" provision, supra, states that this coverage under the policy will be only up to its proportionate share, based on the limits of all applicable policies. For example, a person has one applicable policy for $60,000 and one for $40,000. This person incurs a loss of $80,000. The first policy will not pay $60,000 but only $48,000 (60,000/100,000 or 3/5 of $80,000) and the second policy will pay $32,000 (40,000/100,000 or 2/5 of $80,000). The "Two or More Cars Insured" provision, supra, says that if the person to whom the policy is issued ("auto policy issued to you") has two or more cars insured, then the limit of liability is the highest applicable limit of liability under any one policy.
 
 
 60
 Since Farmers has paid the full amount of the Dreger policy, that policy is not at issue and the Court will not address it. Farmers has paid only $2,000 under the seven Williams policies, five of which are issued to Reed Williams and two of which are issued to Shon Williams. While the Court is aware that Reed and Shon Williams received a multi-vehicle discount based on the multitude of vehicles insured within one household, the policy expressly speaks to "you" in the "Two or More Cars Insured" provision. The Court can only reasonably read "you" to mean the person whose name appears on the Declarations page as the Named Insured. The Named Insured is, after all, the person to whom the policy was issued. Even though Reed Williams received some benefit because Shon Williams also insured his cars with Farmers and vice versa does not mean that all their policies constitute one policy or that "you" suddenly grows from meaning solely the named insured on that policy to also the named insured on another policy. Accordingly, the "Two or More Insured Cars" provision means that Hans Williams may recover under the highest of the policies issued to Reed Williams, one for $2,000, and the highest of the policies issued to Shon Williams, one for $2,000.
 
 
 61
 The next step is to return to the "Other Insurance" provision. All applicable limits of coverage for medical benefits is a total of $14,000--$10,000 (Dreger) + $2,000 (Reed Williams) + $2,000 (Shon Williams). The loss has been stipulated to exceed the coverage of all the policies combined. Thus, the Reed Williams policy must pay 2,000/14,000 of 14,000, that is the full coverage of $2,000. The identical calculation is done for the Shon Williams policy with the identical result--liability of $2,000.
 
 
 62
 Therefore, the Court finds that under the terms of the contract or policy language, Farmers must pay Hans Williams a total of $14,000, or $2,000 additional to the amount it has already paid.
 
 
 63
 ACCORDINGLY, IT IS ORDERED THAT Plaintiff's Motion for Summary Judgment should be and hereby is GRANTED in all respects except that under the terms of the applicable insurance policies Farmers is liable to defendants for $2,000 of additional payments under the medical expense coverage.
 
 
 64
 DATED this 30th day of July, 1992.
 
 
 
 *
 Honorable G. Thomas Van Bebber, District Judge, United States District Court for the District of Kansas, sitting by designation
 
 
 **
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3
 
 
 [1]
 Condition number 6 in the policies provides:
 
 
 [6]
 Two or More Cars Insured
 With respect to any accident or occurrence to which this and any other auto policy issued to you by any member company of the Farmers Insurance Group of Companies applies, the total limit of liability under all the policies shall not exceed the highest applicable limit of liability under any one policy.
 App. to Appellants' Corrected Brief at 61.
 
 
 [1]
 All language of each of the policies at issue is identical, all being Farmers Insurance Exchange "E-Z Reader Car Policy" for Wyoming. The only differences among the policies appear on the Declarations page where the details of the insured, the vehicle insured and the amount of coverage appear
 
 
 [2]
 Six of the seven Williams policies had a medical payments coverage of $2,000. One had a limit of $1,000