**Martha ARNOLD and Paul H. Arnold,
Appellants (Plaintiffs),**

v.

**MOUNTAIN WEST FARM BUREAU
MUTUAL INSURANCE COMPANY,
INC., Appellee (Defendant).**

No. 84–252.

Supreme Court of Wyoming.

Oct. 9, 1985.

Rehearing Denied Nov. 1, 1985.

John E. Stanfield (argued) of Smith, Stanfield & Scott, Laramie, and Sharon A. Fitzgerald (argued), Cheyenne, for appellants.

Paul B. Godfrey and George E. Powers, Jr. (argued) of Godfrey & Sundahl, Cheyenne, for appellee.

Before THOMAS, C.J., and ROSE, ROONEY, BROWN and CARDINE, JJ.

CARDINE, Justice.

This appeal is from a judgment entered upon a jury verdict awarding the appellants thirty-two thousand dollars ($32,000). Appellants' appeal raises four issues which are set out in the following fashion:

"I. Did the trial court err when it instructed the jury that the only basis upon which punitive damages could be awarded is upon a finding that appellee was guilty of 'willful and wanton misconduct' and refused to allow consideration of punitive damages on the basis of fraud or misrepresentation or oppression or malice?

"II. Did the trial court err when it instructed the jury that attorney's fees could only be recovered for a 'refusal' to pay benefits and by rejecting an instruction that an unreasonable delay or failure to pay benefits is equivalent to a refusal to pay benefits?

"III. Did the trial court err when it refused to admit into evidence crucial correspondence between appellee and its attorney and correspondence between appellee's attorney and appellants' attorneys, relating to the merits of the claim and reasons for nonpayment, and excluded pertinent pleadings and orders which demonstrated the manner in which the claim was handled after the complaint was filed?

"IV. Given the policy provisions and the applicable rules of construction, did the trial court err when it ruled that Mr. Arnold's claim for loss of consortium is a mere consequential damage arising from the bodily injury claimed by the injured spouse and that the amount recoverable is limited to the 'per person' amount of the policy?"

We affirm.

On February 22, 1981, appellants, Paul Arnold (the driver) and Martha Arnold (a passenger), were travelling in their automobile heading west out of Scottsbluff, Nebraska. When Mr. Arnold stopped to turn left off the highway, a pickup rear-ended the Arnold automobile. The driver of the pickup was Glenn Ford, an uninsured motorist.

As a result of the accident, the Arnold automobile was damaged and Mrs. Arnold suffered physical injury. One doctor testified that she had a "chronic cervical sprain." He indicated that some permanent damage had been done, and Mrs. Arnold would always experience some discomfort because of the injury.

At the time of the accident the Arnolds insured three vehicles, including the automobile involved in the accident, through the defendant, Mountain West Farm Bureau Mutual Insurance Company (hereinafter Mountain West). Separate premiums were paid on each of the three policies. Each policy provided for uninsured motorist cov-

erage in the amount of $10,000 per person and $20,000 per occurrence.

Following the accident, the Arnolds submitted a Notice of Loss to Mountain West. In response, Mountain West's claim representative contacted Mrs. Arnold on February 23, 1981. The claim representative advised the Arnolds that they would need to get bids on the cost of repairing the automobile and discussed the policy coverage with Mrs. Arnold, explaining that under the terms of the insurance policy Mountain West would provide only excess medical coverage, i.e., medical coverage for those bills not paid under any primary medical coverage. Mrs. Arnold indicated that she did have primary coverage through Blue Cross and Blue Shield. As a result, it was Mountain West's position that it would only pay medical bills that Blue Cross and Blue Shield refused to pay.

Subsequently, a dispute developed concerning Mountain West's obligations. Initially the dispute concerned the Arnold's claim for damages to their car. At that time the Arnolds engaged an attorney to represent them. The parties then also disagreed regarding Mountain West's obligations for Mrs. Arnold's medical bills.

On April 2, 1981, the Arnolds' attorney wrote Mountain West demanding payment of the sum of $10,000 which he believed was the maximum coverage under the uninsured motorist provision of the policy. Mountain West responded by requesting certain documentation in support of the claim which included, among other things, proof of damages and proof that Glenn Ford was an uninsured motorist. During the ensuing one-year period, the parties exchanged letters discussing what documentation was necessary.

As of May 1982, Mountain West had paid the Arnolds the following:

| | | |
|---|---|---|
| 1. | March 24, 1981 (highway report) | $ 2.00 |
| 2. | July 9, 1981 (medical expenses) | 60.11 |
| 3. | September 23, 1981 (medical report) | 85.00 |
| 4. | October 2, 1981 (medical expenses) | 143.50 |
| 5. | October 15, 1981 (automobile repair) | $ 2,246.84 |
| 6. | April 26, 1982 (medical expenses) | 76.50 |

On May 5, 1982, appellants' attorney, by letter, again demanded the full amount of uninsured motorist coverage under the policy limits, which he believed was $10,000. Shortly after this letter, settlement negotiations began between the Arnolds' attorney and an attorney for Mountain West. The Arnolds received a settlement offer of $6,000 but rejected it.

In August 1982, the Arnolds' attorney discussed the matter with Mountain West's director of claims. During the conversation both men lost their tempers. As a result, the Arnolds' attorney withdrew from their representation and was replaced by a second attorney who, in October 1982, initiated this lawsuit.

The matter was tried to a jury commencing July 26, 1984. The trial took six days to complete. In its verdict the jury found:

(1) Martha Arnold suffered $75,000 in damages for personal injury as a result of the automobile accident;

(2) Paul Arnold suffered $7,500 in damages as a result of loss of consortium;

(3) Mountain West did not act in good faith in handling the Arnolds' claims;

(4) As a result of the bad faith, each of the Arnolds were awarded $1,000 in damages;

(5) Mountain West's misconduct was not willful or wanton;

(6) Mountain West's refusal to pay benefits was not unreasonable or without cause; and

(7) At the time of the accident three insurance policies were in effect which provided uninsured motorist benefits.

As a result of the verdict, the district court determined that the insurance policies should be stacked such that Mountain West was obligated up to the $10,000 limit on each policy. Thus, Mountain West was found obligated to pay $30,000 under the terms of the insurance policy. In addition,

Mountain West was ordered to pay $2,000 for its breach of the implied covenant of good faith.

I

The first issue raised by the Arnolds on appeal concerns the jury's decision denying an award of punitive damages. The Arnolds contend that the trial court erred in instructing over objection that punitive damages could only be awarded if the jury found Mountain West guilty of willful and wanton misconduct. The Arnolds argue that the trial court erred in refusing to instruct that punitive damages may also be awarded upon a finding of fraud, malice, misrepresentation, or oppression.

However, this argument must fail. "Punitive damages are not a favorite of the law * * *." *Town of Jackson v. Shaw,* Wyo., 569 P.2d 1246, 1252 (1977). They are awarded only in extraordinary circumstances in order to "publicly condemn some notorious action or inaction * * *." *Campen v. Stone,* Wyo., 635 P.2d 1121, 1123 (1981).

■ Punitive damages are generally not recoverable in an action upon a contract where the parties have made a written agreement between themselves setting their respective rights and obligations. Punitive damages may be recoverable in an action in tort if the conduct constituting the breach rises to the level of an independent tort, but that claim is not here presented nor is it decided by us. In *United States v. Redland,* Wyo., 695 P.2d 1031 (1985), we held that punitive damages are not proper in an action upon a contract to recover damages resulting from a breach of the contract. We said that to recover punitive damages in an action upon a contract, "there must be evidence of spite, ill will or willful and wanton misconduct at the inception of a fraudulent contract * * *." Id. at 1039. The proper remedy for wrongful acts occurring afterwards is compensatory damages. *Waters v. Trenckmann,* Wyo., 503 P.2d 1187 (1972). Where one party breaches the contract in bad faith, the injured party can seek damages for breach of the implied covenant of good faith. The

jury found bad faith and awarded each of the Arnolds $1,000 in damages.

■ There was no evidence of willful or wanton misconduct at the time the parties entered into their contractual agreements. All the evidence which was produced concerned Mountain West's conduct following the receipt of the Notice of Loss. To the extent that the trial judge failed to instruct the jury that willful and wanton misconduct had to occur at the contract's inception, the Arnolds received the benefit of a more favorable instruction than that to which they were entitled. They will not now be heard to argue that they were entitled to an even more favorable instruction. We find no reversible error in appellants' first contention.

II

The second issue raised on appeal concerns the jury's finding that Mountain West's refusal to pay benefits was not unreasonable or without cause. The Arnolds contend that the trial court erred in refusing "to instruct the jury that an unreasonable or unjustifiable failure to timely pay benefits to its insured is the equivalent of a 'refusal to pay' benefits."

The significance of this question arises by virtue of § 26–15–124(c), W.S.1977, June 1983 replacement, which provides:

"In any actions or proceedings commenced against any insurance company on any insurance policy or certificate of any type or kind of insurance, or in any case where an insurer is obligated by a liability insurance policy to defend any suit or claim or pay any judgment on behalf of a named insured, if it is determined that the company refuses to pay the full amount of a loss covered by the policy and that the refusal is unreasonable or without cause, any court in which judgment is rendered for a claimant may also award a reasonable sum as an attorney's fee and interest at ten percent (10%) per year."

Under this provision the Arnolds could have recovered attorney's fees if Mountain

West's refusal to pay benefits was unreasonable or without cause.

At trial the Arnolds sought to have the jury instructed that a delay or failure to pay benefits was equivalent to a refusal to pay. However, the court chose instead to instruct as follows:

"The Wyoming Statutes provide, in part, as follows:

" ' * * * if it is determined that the [insurance] company refuses to pay the full amount of a loss covered by the policy and that the refusal is unreasonable or without cause, any court in which judgment is rendered for a claimant may also award a reasonable sum as an attorney's fee and interest at ten percent (10%) per year.'

"You will answer a question dealing with this issue in the Special Verdict form."

The third question of the special verdict form asked: "In accordance with Instruction No. 16, was the refusal to pay benefits by Defendant unreasonable or without cause?" This question presupposed that there was a refusal to pay benefits. It told the jury that there was a refusal and asked whether the refusal was unreasonable or without cause.

■ "Errors in instructions not injurious or prejudicial are not cause for reversal * * *." *Mainville v. State,* Wyo., 607 P.2d 339, 343 (1980). Here the Arnolds cannot complain about the court's decision not to instruct that refusal to pay included failure to pay. The jury was told that there was a refusal. The only question that the jury was asked to resolve was whether in the language of the statute, § 26–15–124(c), the refusal was "unreasonable or without cause." Further defining or explaining for the jury the meaning of "unreasonable or without cause" is unnecessary. It would serve only to further confuse the issue. The terms have a plain meaning commonly understood. The company can refuse to pay if reasonable or for cause, but not otherwise. What appellants ask says no more. The instruction in the language of the statute was sufficient. Accordingly,

there was no prejudice; the alleged error is not cause for reversal.

### III

The third issue raised by the Arnolds concerns the trial court's refusal to admit into evidence correspondence between Mountain West and its attorney and between the litigants' attorneys as well as certain of Mountain West's pleadings. The Arnolds contend that the correspondence between Mountain West and its attorney was relevant "upon the issues of a lack of good faith and fair dealing" and "the propriety and necessity of punitive damages."

In *Thomas v. Harrison,* Wyo., 634 P.2d 328 (1981), we recognized that the preservation of the attorney-client privilege is essential to the operation of our judicial process. As Justice Raper said in his concurring opinion, encroachment upon the attorney-client privilege "would discourage honesty by a client to his attorney and intrude upon the right of privacy between a lawyer and his client." Id. at 334. For the system to properly function the attorney-client privilege must be protected.

The Arnolds respond that the purpose of the privilege

"is to protect and foster the client's freedom of expression. It is not to permit an attorney to conduct his client's business affairs in secret." *Matter of Fischel,* 557 F.2d 209, 211 (9th Cir.1977).

■ However, here the trial court found otherwise. It concluded that the communications between Mountain West and its attorney were privileged. Rule 501, W.R.E. Implicit in that ruling is a finding that Mountain West's attorney was not conducting that company's business affairs. On appeal, evidentiary rulings will not be reversed absent a showing of an abuse of discretion. *McCabe v. R.A. Manning Construction Company,* Wyo., 674 P.2d 699, 712 (1983). On the facts presented to us we cannot find an abuse of discretion.

■ The Arnolds also challenge the trial court's refusal to admit into evidence

pretrial pleadings filed by Mountain West as well as correspondence between the parties' respective attorneys. They specifically claim that the pleadings and correspondence were relevant on Mountain West's bad faith. However, the jury found that Mountain West acted in bad faith without the evidence. "A party seeking reversal must establish that the error was prejudicial * * *." *Pure Gas and Chemical Company v. Cook*, Wyo., 526 P.2d 986, 992 (1974). Since the Arnolds prevailed on the question of Mountain West's bad faith, they cannot show prejudice on the issue of whether bad faith was present. Furthermore, the evidence could not properly be admitted to establish that punitive damages were appropriate because the evidence did not demonstrate misconduct at the time the contract was entered. Since no prejudice has been shown, we do not address the merits of the issue of whether correspondence between opposing counsel is admissible.

## IV

The final issue raised by the Arnolds concerns the trial court's decision that Paul Arnold's claim for loss of consortium was subject to the per person liability limit. The court's ruling was premised upon its construction of the terms of the contracts here involved. The contracts were three identical insurance policies which provided in pertinent part:

"LIMITS OF LIABILITY

"(a) The limit of liability stated in the declarations as applicable to 'each person' is the limit of the company's liability for all damages, including damages for care and loss of services, arising out of bodily injury sustained by one person in any one accident, and subject to this provision, the limit of liability stated in the declarations as applicable to 'each accident' is the total limit of the company's liability for all such damages for bodily injury sustained by two or more persons in any one accident."

The limits of liability under the uninsured motorist coverage was $10,000 per person

and $20,000 per occurrence. Here the contract provided that the $10,000 per person limit was "the limit of [Mountain West's] * * * liability for *all damages* * * * for care and loss of services, *arising out of bodily injury sustained by one person* in any one accident * * *'" (Emphasis added.) The trial court determined that loss of consortium fit within the phrase "loss of services" and was thus recoverable. No challenge to that ruling is before us. However, the Arnolds argue that the loss of consortium should be recoverable as a separate injury to Paul Arnold not resulting from Martha Arnold's injury and thus not within Martha Arnold's $30,000 limit ($10,000 for each of the three policies).

If a contract is clear on its face, we must assume it reflects the intent of the parties. *Schacht v. First Wyoming Bank, N.A.-Rawlins*, Wyo., 620 P.2d 561 (1980). We are not free to rewrite contracts under the guise of interpretation. *Adobe Oil & Gas Corp. v. Getter Trucking, Inc.*, Wyo., 676 P.2d 560 (1984). So long as there is no ambiguity, we are bound to apply the contract as it is written. *Rouse v. Munroe*, Wyo., 658 P.2d 74 (1983).

The Arnolds' argument flies square in the face of the unambiguous language of the contract. All damages arising out of bodily injury sustained by one person are lumped together for purposes of the liability limit. Paul Arnold's claim for loss of consortium was derivative of Martha Arnold's injury for which she claimed coverage. It arose out of bodily injury sustained by one person (Martha Arnold) and is subject to the $10,000 coverage limitation. Accordingly, the trial court correctly limited the recovery under the insurance policy to $30,000.

Affirmed.