NATIONAL FARMERS UNION
PROPERTY AND CASUALTY
COMPANY, Plaintiff,

v.

Joseph A. ZUBER, Arwin M. Grant and Laurene Grant, as individuals and as parents and guardians of Jessica Grant, Defendants.

Arwin M. GRANT, Laurene Grant and Jessica Grant, a minor, by her next friends, Arwin M. Grant and Laurene Grant, Plaintiffs,

v.

NATIONAL FARMERS UNION
PROPERTY AND CASUALTY
COMPANY, Defendant.

Nos. 92–CV–1024–B, 92–CV–1025–J.

United States District Court,
D. Wyoming.

May 11, 1993.

Scott E. Ortiz, Casper, WY, for plaintiff.

David B. Hooper, Riverton, WY, Timothy J. Bommer, Jackson, WY, for defendants.

### ORDER GRANTING NATIONAL FARMERS UNION'S MOTION FOR SUMMARY JUDGMENT

BRIMMER, District Judge.

The above-entitled matter having come before the Court upon National Farmers Union Property and Casualty Company's, the Zubers' and Grants' respective cross-motions for summary judgment, and the Court having reviewed the materials on file herein, having heard argument from the parties, and being fully advised in the premises, FINDS and ORDERS as follows:

### Background

In February 1986, insurance agent Lynn Paskett sold a personal insurance policy is-

sued by National Farmers Union Property & Casualty Company ("NFU") to Joseph and Delores Zuber ("Zubers"). In March 1986, Zubers added to their policy a 1986 GMC pickup. The policy issued to the Zubers contained a declaration page setting forth liability limits of $100,000 'per person' and $300,000 per occurrence. Zubers testified that they had not read their policy very carefully prior to the accident which lead to this lawsuit.

In November 1990, Mr. Zuber was involved in an accident with the Grant family. Thereafter, a dispute arose among NFU, the Grants and Zubers regarding the applicable liability limitation contained in Zubers' policy. The Grants contended the Zubers' policy contained no 'per person' limitation of liability, and further that their claims for loss of consortium were not subject to any 'per person' liability connected with Arwin Grant's physical injuries. NFU filed for a declaratory judgment naming its insured, Joseph Zuber, and the Grant family as defendants. Mr. Zuber's counsel answered alleging that Zuber believed his family had purchased $300,000 of insurance and that Zuber was not aware that his auto insurance policy contained a 'per person' limitation. The Grants answered alleging failure to state a claim, estoppel, and unclean hands. Grants asserted as an affirmative defense the above-mentioned loss of consortium argument. Both Zubers and Grants filed counterclaims against NFU seeking declaratory judgments. This is case No. 92–CV–1024–B

Shortly after the filing of No. 1024–B, the Grants filed an action in the Ninth Judicial District seeking declaratory judgment regarding the terms and conditions of the insurance policy issued to Zuber as well as damages for NFU's alleged breach of the Wyoming Unfair Claims Settlement Practices Act. NFU had the case removed to federal court, No. 92–CV–1025–J. The cases were consolidated on August 20, 1992.

### Standard of Review

"By its very terms, [the Rule 56(c)] standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly

supported motion for summary judgment; the requirement is that there is no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986) (emphasis in original).

The trial court decides which facts are material as a matter of law. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* at 248, 106 S.Ct. at 2510; *see also Carey v. United States Postal Service,* 812 F.2d 621, 623 (10th Cir.1987). Summary judgment may be entered "against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Carey,* 812 F.2d at 623. The relevant inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Carey,* 812 F.2d at 623. In considering a party's motion for summary judgment, the court must examine all evidence in the light most favorable to the nonmoving party. *Barber v. General Elec. Co.,* 648 F.2d 1272, 1276 n. 1 (10th Cir.1981).

### Contentions of the Parties

Grants contend that the policy language is ambiguous and, therefore, that this Court must construe the policy's language in their favor. Grants further contend that their claim for loss of consortium is a separate cause of action which does not fall within the bodily injury 'per person' liability limit covering Arwin Grant's injuries. Zubers and Grants together urge that this Court hold that Zubers' policy contained $300,000 in bodily injury liability coverage for the occurrence with no $100,000 'per person' limitation.

By contrast, NFU contends that the policy language is clear and unambiguous regarding the policy's 'per person' limitation, and that

Laurene and Jessica Grant may not recover separately for their loss of consortium claims.

loss of consortium claim is subject to the Zubers' 'per person' liability limitation.

### Discussion

For purposes of analysis, the Court divides its discussion into two parts. First, the Court analyzes whether the policy language at issue is ambiguous as a matter of law. Second, the Court discusses whether Grants'

### A. Ambiguity.

The issue of ambiguity arises from the declaration page and from Part I, "Limits of Liability" section of the policy. The initial February 1986 policy contained the following limits of liability for bodily injury:

### COVERAGES

### (IN THOUSANDS)

| VEH. NO. | BODILY INJURY | | PROPERTY DAMAGE | UNINSURED MOTORIST | | MEDICAL PAYMENTS |
|---|---|---|---|---|---|---|
| | EA. PERSON | EA. OCCUR. | EA. OCCUR. | EA. PERSON | EA. ACCIDENT | EA. PERSON |

### LIMITS OF LIABILITY

| | | | | | | |
|---|---|---|---|---|---|---|
| 1 | 100 | 300 | 50 | 100 | 300 | 25 |
| 2 | 100 | 300 | 50 | 100 | 300 | 25 |
| 3 | 100 | 300 | 50 | 100 | 300 | 25 |

The policy contained this graphic/language until August 1989. From August 1989 until February 1991, NFU employed a new declaration page format which appeared as follows:

### LIMITS OF LIABILITY
### EACH OCCURRENCE

| | | |
|---|---|---|
| BODILY INJURY | $100,000 | $300,000 |
| PROPERTY DAMAGE | $ 50,000 | |
| MEDICAL PAYMENTS | $ 25,000 | |
| UNINSURED MOTORISTS—BI | $100,000 | $300,000 |

This latter declaration page was "in effect" at the time of the accident at issue.

Throughout the above-mentioned periods, February 1986 through February 1991, the "Limits of Liability" section of Zubers' policy stated as follows:

### LIMITS OF LIABILITY

The limits of liability shown in the Declarations apply subject to the following:

(1) The **bodily injury** liability limit for "each person" is the maximum for **bodily injury** sustained by one person in any one occurrence.

(2) Subject to the **bodily injury** liability limit for "each person," the **bodily injury** liability limit for "each occurrence" is the maximum for **bodily injury** sustained by two or more persons in any one occurrence.

(3) the **property damage** liability limit for "each occurrence" is the maximum for all damages to all property in one occurrence.

We will pay no more than these maximums regardless of the number of vehicles to which this policy applies, **insured persons,** claims, claimants or policies, or vehicles involved in the occurrence. Any amount payable under this coverage to or for an injured person will be reduced by any payment made to that person under the Uninsured Motorists Coverage to this policy.

This Court interprets the policy's language according to five basic tenets of construction, recently summarized in the Wyoming Supreme Court case of *State of Wyoming ex rel. Farmers Ins. Exch. v. District Court of the Ninth Judicial Dist.,* 844 P.2d 1099 (Wyo.1993). These tenets are: (1) the court should give words their "common and ordinary" meaning; (2) the court should determine what the parties reasonably intended from the policy's language; (3) the language of the policy should not be so strictly construed as to "thwart the general object of the insurance;" (4) the court should enforce the policy according to its terms absent an ambiguity; and (5) where the court finds ambiguity, the policy should be construed liberally in favor of the insured; if the policy is "fairly susceptible" of two constructions, the court should adopt the one which favors the insured. *Id.* at 1101–02, *citing, Commercial Union Ins. Co. v. Stamper,* 732 P.2d 534, 539 (Wyo.1987).

Given these tenets, this Court finds that the provisions at issue in the instant case are clear and unambiguous as a matter of law. Grants contend that the language at issue is ambiguous because "the most prominent part of the policy, the declaration page, only refers to "each occurrence." Grants' Brief in Support of Motion for Summary Judgment at 8. Zubers essentially argue that the August 1989 changed declaration page constituted a material change to the policy and therefore created a new contract between Zubers and

NFU, though Zuber cites no authority in support of this proposition. Zuber's Memo in Opposition to Summary Judgment Motion by Plaintiff at 2–3.

■ Generally, courts will not read parts of a policy, such as the declaration page, in isolation, but must construe the policy as a whole to best effect what the parties intended. *Carlson v. Water Unlimited, Inc.,* 822 P.2d 1278, 1281 (Wyo.1991) (contract as a whole must be considered with each part being read in light of the other parts); *Commercial Union Ins. Co. v. Stamper,* 732 P.2d 534, 540 (Wyo.1987) (court read endorsement sheets and declaration sheets *conjunctively* to determine what parties intended).

This Court observes that the policy's "Limits of Liability" section fixes the rights of the parties while the declaration page specifies the amount of coverage. Construing the policy in this manner gives effect to all of the policy's provisions and squares with the otherwise plain language in the "Limits of Liability" section in Part I of the policy. *See United Services Automobile Assoc. v. Baggett,* 209 Cal.App.3d 1387, 1397, 258 Cal.Rptr. 52, 59 (Cal.Ct.App.1989) (plaintiff's confusion regarding declaration page resolved by referring to "Limits of Liability" section). Reading the policy as Grants suggest overemphasizes the missing words "per person" on the declaration page thereby reading out of the policy the Part I "Limits of Liability" section. *See National Chiropractic Mutual Insurance Company v. Morgan,* 116 Or.App. 196, 840 P.2d 732, 736–37 (1992) (Warren, J., dissenting) (majority opinion erred because it emphasized the supposed 'ordinary' meaning of one word in the policy, effectively reading out the "Limits of Liability" section).

■ Even if this Court held that the language at issue was ambiguous, Zubers' and Grants' argument would still fail because NFU has presented overwhelming extrinsic evidence suggesting the parties intended that the limits of the policy be $100,000 per person, $300,000 per occurrence.[1] Where an

---

1. The Court remains aware that the Wyoming Supreme Court has not decided whether a court may consider extrinsic evidence to determine the parties' intentions where the policy is ambigu-

ous. General contract law in Wyoming provides that a court should consider extrinsic evidence where terms or conditions of the contract are ambiguous or unclear. *See e.g., Westates Con-*

ambiguity exists, the court may employ extrinsic evidence to ascertain what the parties intended. The court may order summary judgment if the extrinsic evidence raises no material issue of fact. *Carlson v. Water Unlimited, Inc.*, 822 P.2d at 1281; *Westates Construction Co. v. City of Cheyenne*, 775 P.2d 502, 504 (Wyo.1989).

■ The Court finds that the extrinsic evidence submitted by the parties strongly suggests that Zubers' insurance policy included a limit of $100,000 per person, for at least four reasons. First, the revised declaration page format did not change the amounts of coverage previously issued to Zubers. NFU's new declaration page format retained the 100,000/300,000 distinction, despite the fact that the words 'per person' did not appear. Second, the $100,000 'per person' limitation was reiterated every six months in the form of renewal notices to Mr. Zuber. *See* Zuber Deposition at 87. The renewal notices themselves probably do not come within the four corners of the insurance policy. However, a reasonable person who reviewed these notices and paid premiums per the attached invoices probably would have objected to their contents if the person thought that he had coverage other than 100,000 per person/300,000 per accident.

Neither party presented evidence that Zuber objected, even when NFU changed its declaration page format in August 1989. Third, Wyoming law states that the insured has a duty to read his or her policy. *See e.g., St. Paul Fire & Marine Co. v. Albany County School District No. 1*, 763 P.2d 1255, 1263 (Wyo.1988). While this duty does not necessarily require that the insured understand everything he reads, this Court reasons that the duty requires at least a "casual glance through the pages of the policy." *See e.g., State Farm General Insurance Co. v. Emerson*, 102 Wash.2d 477, 687 P.2d 1139, 1144 (1984). Zuber's deposition testimony suggests that Zuber not only never attempted to read his policy, but also that he had little idea, if any, regarding what he had purchased from NFU. Zuber Deposition at 86–91. Fourth, the only evidence to the contrary is Mr. Zuber's testimony that he believed his policy contained $300,000 liability coverage with no 'per person' limit. Zubers Answer ¶¶ 14, 15; Zuber Deposition at 83.

This Court need not address Zubers' and Grants' argument that Zuber's expectation regarding the policy's 'per person' limitation was objectively reasonable where it finds the policy provisions at issue are clear and unam-

struction Co. v. City of Cheyenne, 775 P.2d at 504. However, Zubers and Grants contend that, where ambiguous, an insurance policy must be construed in favor of the insured. *See e.g.,* Zuber's Memo in Opposition to Motion for Summary Judgment By Plaintiff at 5. This statement of the law is not precisely correct. First, the rule of construction with regard to insurance contracts states that, where the court finds ambiguity, the policy should be construed liberally in favor of the insured and strictly against the insurer. *Stamper,* 732 P.2d at 534. The problem with the *Stamper* court's statement of the law is that it is, pardon the expression, ambiguous. On one hand, the *Stamper* court states that ambiguous policy provisions "should be construed *liberally* " in favor of the insured. *Liberally* does not mean *strictly* and appears to leave room for cases where the court finds that extrinsic evidence strongly militates in favor of the insurer. On the other hand, in the same breath the *Stamper* court states that ambiguous policy provisions should be construed *"strictly* against the insurer." *Strictly* means 'in all cases' and suggests that a court always should read an ambiguous policy statement against the interests of the insurer.

Second, the Wyoming Supreme Court further muddled the issue in the very recent case of *First Wyoming Bank v. Continental Insurance Co.* In *First Wyoming,* the court stated that ambiguous insurance policy language should be construed in favor of the insured whenever *reasonable,* No. 90–258, 1993 WL 6981 at *11 (Wyo. Jan. 19, 1993), *citing,* 2 Couch on Insurance § 15:74 (2d ed. 1984). Such a statement leaves room for instances when the court may construe an ambiguous policy provision against the interests of the insured, as in the case at bar.

Third, the case law reveals that whether a court may admit extrinsic evidence to clarify what the parties intended in their insurance contract varies by state. *See e.g., Coleman Co., Inc. v. California Union Ins. Co.,* 960 F.2d 1529, 1536 (10th Cir.1992) (Kansas courts may not admit extrinsic evidence to clarify insurance contract provisions); *compare Farmers Alliance Mutual Insurance Co. v. Bakke,* 619 F.2d 885, 889 (10th Cir.1980) (New Mexico courts may admit extrinsic evidence to clarify an ambiguity in the insurance contract).

In any event, this footnote does not affect this order insofar as the Court held that Zubers' policy was clear and unambiguous as a matter of law.

## 1022

biguous.[2]  *Carlson,* 822 P.2d at 1281.

### B. Loss of Consortium.

■ In *Arnold v. Mountain West Farm Bureau Mutual Ins.,* 707 P.2d 161 (Wyo. 1985), the Wyoming Supreme Court held that an insured spouse's loss of consortium claim was subject to the insured's 'per person' liability limits. The policy language at issue stated the 'per person' limitation was a "limit of liability for *all damages* ... for care and loss of services, *arising out of bodily injury sustained by one person* in any one accident." *Id.* at 166. The *Arnold* court implicitly affirmed the trial court's finding that loss of consortium fit within the phrase "loss of services," and further held that the policy language made clear that "all damages arising out of bodily injury sustained by one person are lumped together for purposes of liability limit." *Id.*

In the case at bar, Zubers' policy defines "bodily injury" as a "sickness, disease or death to any person." NFU's Motion for Summary Judgment, Exh. "3" at 1. This Court is persuaded that Grants' loss of consortium claim derives from the insured's bodily injury and therefore is subject to the same liability limitations, even though Zubers' policy does not use the words "loss of services." *See Federal Kemper Insurance Company v. Karlet,* 428 S.E.2d 60 (W.Va. 1993) (citing a plethora of cases from various jurisdictions which hold that loss of consortium claims by spouse or child derive from same claim as bodily-injured person and therefore are subject to same 'per person' limitation). In *Karlet,* the West Virginia Supreme Court of Appeals reasoned, in part, as follows:

> An often cited reason for holding that a spouse's claim for loss of consortium is included within the 'per person' limit of liability for damages because of bodily injury to one person is that the term 'one person' repeatedly has been construed to refer to the person injured directly and the words 'each occurrence' to include the injuries of several persons, regardless of how many persons may suffer loss. The limitation applies to all damages sustained by all

persons as a result of bodily injury to one person. This construction does not render the 'per occurrence' limit a nullity because that provision applies to situations where more than 'one person' suffers 'bodily injury' in a single occurrence.

*Id., citing, Izzo v. Colonial Penn Ins. Co.,* 203 Conn. 305, 524 A.2d 641, 644 (1987). *Cf. Allstate Insurance Co. v. Fibus,* 855 F.2d 660, 662 (9th Cir.1988) (auto insurance policy which did not expressly aggregate consortium claims with underlying bodily injury claims interpreted to provide separate coverage for consortium under California law). For reasons articulated in *Arnold* and *Karlet, supra,* the Court concludes that the Grants' claim for loss of consortium covering Arwin Grant under Zubers' policy is subject to the 'per person' limit of $100,000 articulated therein. It is therefore

**ORDERED** that NFU's motion for summary judgment be, and the same hereby is, **GRANTED.**

**2.** The Court implicitly addressed such arguments in the discussion of extrinsic evidence *supra.*