2001 WY 112

William G. AARON, Jr. and Kathy Aaron, husband and wife; and William G. Aaron, Jr., Personal Representative of the Estate of Danielle K. Aaron, deceased, Appellants (Plaintiffs),

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Appellee (Defendant).

No. 00–102.

Supreme Court of Wyoming.

Nov. 20, 2001.

V. Anthony Vehar of Vehar Law Offices, P.C., Evanston, WY, Representing Appellants. Argument by Mr. Vehar.

Ford T. Bussart of Bussart, West, Piaia & Tyler, P.C., Rock Springs, WY, Representing Appellee. Argument by Mr. Bussart.

Before LEHMAN, C.J., and GOLDEN and KITE, JJ., and SPANGLER, D.J. Ret.

LEHMAN, Chief Justice.

[¶ 1]   The issues in this case involve the interpretation and application of "underinsured" motorist (UIM) coverages in five separate policies of automobile liability insurance issued by State Farm to the appellants. We reverse and remand the district court's summary judgment determination as to the limits of the insurer's maximum potential liability.

## ISSUES

[¶ 2]   Appellant presents this statement of the issues:

> Did the trial court err in its interpretation of the underinsured motorist contracts (policies) in holding that the amount paid by the tortfeasor's insurer should be offset against each of the underinsured motorist contracts which provided coverage for Appellants?

## FACTS AND PROCEDURAL HISTORY

[¶ 3]   The parties have stipulated to the following material facts. On June 27, 1996, appellants' daughter, Danielle Aaron, was fatally injured while a passenger in a motor vehicle negligently driven by Joshua Schofield. No other vehicle was involved in the accident. Allied Mutual Insurance Company insured Mr. Schofield's vehicle under a policy with a liability limit of $50,000. At the time of the accident, the Aarons were the holders of five separate policies of motor vehicle insurance issued by State Farm Mutual Automobile Insurance Company (State Farm). Four of the policies provided underinsured motorist (UIM) coverage with liability limits of $100,000 per person. The fifth policy provided UIM coverage with limits of $50,000 per person. The Aarons paid a separate premium for UIM coverage in each of the policies. All policy provisions at issue contain identical language.

[¶ 4]   On June 25, 1998, the Aarons filed suit against State Farm seeking UIM coverage up to policy limits on all five issued policies. Subsequently, the Aarons, with the consent of State Farm, settled their claim

against Mr. Schofield for his policy limit of $50,000 by check dated February 26, 1999. On the same date, State Farm tendered to the Estate of Danielle Aaron the sum of $50,000—the amount it claims was owed under the policies. Following discovery, both parties stipulated to the facts and moved for summary judgment based upon the provisions of the insurance contract.

■ [¶ 5] The Aarons contended that the policies could be "stacked" as they were entitled to personal insurance protection provided by each of the five policies.[1] They also argued that Mr. Schofield's payment should be credited only after the aggregation of all coverage. Accordingly, they contended the policies' UIM coverage limits should be added to equal $450,000, offset by Mr. Schofield's $50,000, allowing recovery of $400,000. State Farm, relying on the policies' limits of liability provisions, contended the contracts unambiguously precluded the stacking of coverage. Consequently, the Aarons were limited to coverage under a single $100,000 policy, to then be offset by Mr. Schofield's settlement of $50,000, allowing recovery of $50,000.

[¶ 6] On February 18, 2000, the district court issued its order granting partial summary judgment on the issue of liability. The court found the policy to be clear and unambiguous and concluded that its provisions did not preclude "stacking" of coverage; therefore, the insured could recover under each of the policies. However, based upon its reading of the parties' insurance contract, the district court did not aggregate coverage but rather credited the $50,000 payment by Mr. Schofield's insurer *seriatim, i.e.,* five separate times-once against each of the Aarons' policies. Accordingly, the district court determined the Aarons could potentially recover $200,000.

■ [¶ 7] Procedurally, the district court's order specified that, pursuant to W.R.C.P. 54(b), its decision was subject to immediate appeal to this court. The district

court expressly acknowledged that the actual amount of damages was yet undetermined, but issued its judgment on the limits of liability under the assumption held by the parties that the damages will exceed policy limits.[2] The Aarons' timely appeal of the district court's decision to offset followed. State Farm failed to cross-appeal the district court's decision. Consequently, we will not review the court's determination that the policies' provisions did not prohibit the stacking of coverage except to the extent necessary to decide the issue before us. "Our rule is well settled that a party who does not take an appeal may not attack a judgment in this court. Our requirement is that a cross-appeal be perfected in order to attack the judgment." *Racicky v. Simon,* 831 P.2d 241, 244 (Wyo.1992).

### STANDARD OF REVIEW

■ [¶ 8] We will affirm a summary judgment provided there is no genuine issue of material fact and the law clearly entitles the moving party to prevail. *Martin v. Farmers Ins. Exch.,* 894 P.2d 618, 620 (Wyo. 1995); *Lincoln v. Wackenhut Corp.,* 867 P.2d 701, 702 (Wyo.1994). An insurance policy constitutes a contract between insurer and insureds. *Martin,* at 620; *Worthington v. State,* 598 P.2d 796, 806–07 (Wyo.1979). When the parties have stipulated to all material facts, summary judgment is proper if such an insurance contract is found to be unambiguous. *Prudential Preferred Properties v. J & J Ventures, Inc.,* 859 P.2d 1267, 1271 (Wyo.1993).

### DISCUSSION

[¶ 9] This case presents an issue of first impression for this court. Although one of the most highly litigated issues in insurance law of the past decade, we have yet to interpret insurance provisions in relation to the "stacking" of underinsured motorist coverage or the appropriate method for crediting the

---

1. "[S]tacking describes the phenomenon of insureds or claimants against them adding all available policies together to create a greater pool in order to satisfy their actual loss." 12 Lee R. Russ & Thomas F. Segalla, *Couch on Insurance 3D,* § 169:4 (1998).

2. We recently stated in *Errington v. Zolessi,* 9 P.3d 966, 970 (Wyo.2000): "To dissipate any uncertainty, we hold that the district court may not grant a final, appealable summary judgment on part of a claim, *other than a determination of liability."* (Emphasis added.)

tortfeasor's payment against the insured's coverage once policies are stacked. However, we have had occasion to address both inter-policy stacking of uninsured motorist coverage in *Ramsour v. Grange Ins. Ass'n,* 541 P.2d 35 (Wyo.1975), and intra-policy stacking of uninsured motorist coverage in *Commercial Union Ins. Co. v. Stamper,* 732 P.2d 534 (Wyo.1987).[3]

[¶ 10] In both *Ramsour* and *Commercial Union* this court first determined the manner in which public policy as expressed in Wyo. Stat. Ann. § 31–10–101 affected the stacking of uninsured motorist coverage. We found this initial public policy determination necessary in light of our insurance jurisprudence holding that parties have the right to embody in their contract whatever lawful terms they wish, *Commercial Union,* 732 P.2d at 536; *Alm v. Hartford Fire Ins. Co.,* 369 P.2d 216, 217 (Wyo.1962); *Rosenblum v. Sun Life Assurance Co. of Canada,* 51 Wyo. 195, 65 P.2d 399 (1937), on the condition that the insurance agreement does not conflict with pertinent statutes or public policy. *Commercial Union,* at 536; *Allstate Ins. Co. v. Wyoming Ins. Dep't,* 672 P.2d 810, 816 (Wyo. 1983). We stated that when delineating public policy we would give force and effect to those policies announced through applicable statutes or controlling precedent. *Commercial Union,* at 536.

[¶ 11] In the instant case, the district court found that there was no public policy that would prohibit the stacking of underinsured motorist coverage. We agree with this general proposition. In contrast to many states that have passed legislation on the subject, Wyoming statutes governing uninsured motorist coverage are silent as to the treatment of *underinsured* motorist coverage.[4] Nor can we find controlling precedent identifying any public policy that would prohibit the aggregation of coverage by an in-sured who has purchased multiple insurance policies. We stated in *Ramsour,* 541 P.2d at 38:

> The only inequity that there could be would be to permit a "stacking" of coverage in order to permit the insured to recover more than his damage and thus gain a windfall. We do not approve such "stacking." On the other hand, to not permit "stacking" to result in a sum equal to or less than insured's damage would result in a windfall to the insurer. "Stacking" to that extent is approved.

[¶ 12] Thus, this court has generally approved the "stacking" of multiple insurance coverages in order to provide complete indemnification for the injuries sustained by innocent motor vehicle accident victims. However, we also have acknowledged that no broad public policy exists to require the aggregation of coverage in all circumstances, especially in the face of clear and unambiguous policy language precluding such "stacking." *Commercial Union,* 732 P.2d at 538.[5] Reading our cases together, we conclude that if insurers wish Wyoming courts to enforce policy provisions which will result in a "windfall to the insurer" by precluding the aggregation of uninsured or underinsured motorist coverage from separate policies for which separate premiums have been paid by the insured and accepted by the insurer(s), they must have done so clearly and unambiguously in terms that a lay-insured of ordinary intelligence could easily comprehend. The insurer through its policy must clearly explain to the insured what additional coverage is in fact being purchased by the payment of an additional premium and what additional risk the insurer is purporting to assume by the receipt of the additional premium so that the insurance consumer at the time of purchase can make

---

**3.** We note that, applying Wyoming law, the federal district court has interpreted an insurance contract to preclude the stacking of underinsured motorist coverage. *See Farmers Ins. Exch. v. Williams,* 823 F.Supp. 927 (D.Wyo.1992).

**4.** Likewise, the Wyoming Insurance Department has promulgated regulations governing uninsured motorist endorsements. *See* Regulations, Wyoming Dept. of Insurance, ch. 23 § 1–10. At this time, there are no regulations governing underinsured motorist endorsements.

**5.** We note that in our decision in *Commercial Union* the court was careful to emphasize that the insured was attempting to stack multiple forms of coverage within a *single* insurance policy.

an informed decision whether or not to pay the premium. Otherwise, "[b]ecause insurance policies represent contracts of adhesion where the insured has little or no bargaining power to vary the terms, if the language is ambiguous, the policy is strictly construed against the insurer," *Doctors' Co. v. Insurance Corp. of America*, 864 P.2d 1018, 1024 (Wyo.1993) (citing *St. Paul Fire & Marine Ins. Co. v. Albany County Sch. Dist. No. 1*, 763 P.2d 1255, 1258 (Wyo. 1988); 7 Walter H.E. Jaeger, *Williston on Contracts* § 900 at 19, 29 (3d ed.1963)), we will presume the payment of additional separate premiums was not intended to result in a "windfall to the insurer" but rather was intended to purchase additional "stackable" coverage commensurate with the insured's damages.[6]

[¶ 13] In its ruling below, the district court found the policies failed to clearly and unambiguously preclude the stacking of the insured's policies. Based upon the law as articulated, we may well have affirmed this determination on its merits; however, because State Farm has failed to cross-appeal the district court's judgment, we will not herein explicitly review the applicable policy provisions and instead summarily affirm the district court's conclusion on this point.

[¶ 14] Turning now to the issue of the proper method for crediting the tortfeasor's liability payment against the insured's multiple underinsured motorist policies, in the case before us, as in *Commercial Union*, in the absence of pertinent Wyoming statutes or otherwise established public policy on point, we will defer to the language of the parties' insurance contracts to resolve the issue. The validity and construction of provisions of uninsured or underinsured motorist coverage which provide that damages under the coverage will be reduced by the amount of recovery from the tortfeasor (reduction clauses) have been the source of much litigation. The variety of approaches and the divergence in view in addressing the issue are well illustrated by a recent annotation on the topic. *See* Jay M. Zitter, Annotation,

*Validity and Construction of Provision of Uninsured or Underinsured Motorist Coverage that Damages Under the Coverage Will be Reduced by Amount of Recovery from Tortfeasor*, 40 A.L.R.5th 603 (1996). *See also* Alan I. Widiss, *Uninsured and Underinsured Motorist Insurance*, Part III, *Underinsured: The Coverage, The Claims Process* (Rev.2d ed. Anderson Publishing 2001).

[¶ 15] It is well established through this court's precedent that general principles of construction will be followed when interpreting conditions of an insurance agreement. Basic tenets stated in *McKay v. Equitable Life Assurance Society of the United States*, 421 P.2d 166, 168 (Wyo.1966), and applied in controversies involving insurance policies in the state of Wyoming are:

1. "[T]he words used will be given their common and ordinary meaning.... Neither will the language be 'tortured' in order to create an ambiguity."

2. "The intention of the parties is the primary consideration and is to be ascertained, if possible, from the language employed in the policy, viewed in the light of what the parties must reasonably have intended."

3. "Such [insurance policy] contracts should not be so strictly construed as to thwart the general object of the insurance.... [T]he parties have the right to employ whatever lawful terms they wish and courts will not rewrite them."

4. "Absent ambiguity, there is no room for construction and the policy will be enforced according to its terms."

5. "[W]here such [insurance policy] contracts are so drawn as to be ambiguous and uncertain and to require construction, the contract will be construed liberally in favor of the insured and strictly against the insurer. Also, if the contract is fairly susceptible of two constructions, the one favorable to the insured will be adopted."

*Commercial Union* at 539 (citations omitted); *see also State ex rel. Farmers Ins. Exch. v.*

---

6. In *Ramsour* we further indicated as an alternative to our holding of unenforceability that "excess" or "other insurance" clauses found in multiple motorist policies might be construed to be mutually repugnant and thus ineffective. 541 P.2d at 38–39.

*District Court of Ninth Jud. Dist.,* 844 P.2d 1099, 1101 (Wyo.1993).

[¶ 16]   The reduction clauses in the policies issued to the Aarons provide:

### Limits of Liability—Coverage W

. . .

2.   We will not pay any amount which would:

a.   duplicate payments the *insured* has received or will receive for the same elements of loss; or

b.   cause the *insured* to recover more than the damages sustained.

. . .

5.   The most we pay any one *insured* is the lesser of:

a.   the difference between the "each person" limit of this coverage and the amount paid to the *insured* by or for *any person* or organization who is or may be held legally liable for the *bodily injury;* or

b.   the difference between the amount of the *insured's* damages for *bodily injury* and the amount paid to the *insured* by or for any *person* or organization who is or may be held legally liable for the *bodily injury.*

The district court interpreted subsection 5a above to require that the $50,000 payment received from the tortfeasor, Joshua Schofield, be subtracted successively-once from each of the Aarons' five policies.   In effect, State Farm was credited against its UIM coverage with five times the amount paid to the insured by the tortfeasor, $250,000 rather than the $50,000 actually paid.   While we find the applicable language clear, unambiguous and enforceable in establishing the insurer's right to a setoff of the tortfeasor's liability payment, we agree with those courts which limit the credit to the insurer to the amount actually paid to the insured "by or for 'any person' or organization who is or may be held legally liable for the 'bodily injury.'"   *See e.g. Compton v. State Farm Mut. Auto. Ins. Co.,* 870 P.2d 545 (Colo.App. 1993); *Allstate Ins. Co. v. Link,* 35 Conn.

App. 338, 645 A.2d 1052 (1994);   *Blevio v. Aetna Casualty & Sur. Co.,* 39 F.3d 1 (C.A.1 Mass.1994);   *Onley v. Nationwide Mut. Ins. Co.,* 118 N.C.App. 686, 456 S.E.2d 882 (1995);   *Matter of Settlement for Personal Injuries of Konicki,* 186 Wis.2d 140, 519 N.W.2d 723 (App.1994);   *Neuman v. State Farm Mut. Auto. Ins. Co.,* 492 N.W.2d 530 (Minn.1992).   In fact, State Farm does not cite to a single court which has approved its interpretation of the reduction clauses at issue as justifying duplicative credit.   Nor can we find one so holding, without suffering subsequent reversal, through our own independent research.   Instead, the courts addressing the issue reason that if the policies were issued by multiple insurance companies, each would be entitled to only its pro-rata share of the tortfeasor's credit, and no different result is logically warranted when the policies are issued by a single insurance company.   "To hold otherwise would mean that an award due an insured is reduced unfairly by twice the amount actually paid out by or on behalf of the tortfeasor and that an insurer is entitled to double the tortfeasor's credit merely by issuing separate policies.   Such a result would be unfairly detrimental to the insured."   *Allstate Ins. Co. v. Link,* 645 A.2d at 1058.

[¶ 17]   However, we also reject the interpretation urged by the appellant that requires we aggregate the policies' limits before crediting the tortfeasor's payment in a single offset.   We think to do so would mean ignoring the fact that five *separate* and individual policies of insurance were issued by State Farm. Instead, the rule for crediting the tortfeasor's payment we outline today is applicable and operates identically whether the multiple policies under which the insured is entitled to recover are issued by a single insurance company or by various companies. Accordingly, we hold that in situations where multiple UIM policies apply to a given loss, the amount the insured is entitled to recover under each policy will be reduced by the insurer's pro-rata share of the tortfeasor's payment.   Thus, as previously established because the Aarons are entitled to recover under each policy,[7] the total amount of cover-

---

**7.**   With respect to the $50,000 policy, State Farm

failed to raise below or in answer to this appeal,

age potentially available to them is $450,000. State Farm is entitled to a credit of $5,555.55 against the $50,000 policy. [50,000 (policy coverage) 450,000 (total coverage) = .111 × $50,000 (tortfeasor payment)]. Likewise, State Farm is entitled to a credit of $11,111.11 against each of its four $100,000 policies. The end result is that under the $50,000 policy State Farm is potentially liable for $44,444.45 and under each of the $100,000 policies is potentially liable for $88,888.89. Adding the levels of coverage following the offset results in potential liability for State Farm in the amount of $400,000. We, therefore, reverse that part of the district court's judgment crediting State Farm with a $250,000 offset and remand for any necessary further proceedings not inconsistent with this opinion.

the case of *State ex. rel. Farmers Ins. Exch. v. Dist. Court of Ninth Judicial District,* 844 P.2d 1099 (Wyo.1993), wherein we applied policy language defining an underinsured motorist as one whose policy limits are less than the insured's coverage to hold there was no liability on the part of the insurer when the insured's policy limits and the tortfeasor's policy limits were equal.