No. 04-305

IN THE SUPREME COURT OF THE STATE OF MONTANA

2005 MT 58

ANTHEL BROWN,

        Petitioner and Appellant,

    v.

DEPARTMENT OF CORRECTIONS,

        Defendant and Respondent.


APPEAL FROM:    District Court of the First Judicial District,
                    In and for the County of Lewis and Clark, Cause No. ADV 2004-172
                    The Honorable Dorothy McCarter, Judge presiding.


COUNSEL OF RECORD:

        For Appellant:

                Anthel Brown, *pro se*, Crossroads Correctional Center, Shelby, Montana

        For Respondent:

                Honorable Mike McGrath, Montana Attorney General, Diana Leibinger Koch, Special Assistant Attorney General, Helena, Montana


Submitted on Briefs:  October 6, 2004

Decided:  March 8, 2005

Filed:

_____
                    Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1      Anthel Brown, appearing *pro se*, appeals the District Court's dismissal of his petition for injunctive relief against the Department of Corrections ("DOC"). We reverse and remand.

## ISSUE

¶2      Did the District Court err when it dismissed Brown's petition for injunctive relief on the grounds that his claim was *res judicata*?

## FACTUAL AND PROCEDURAL BACKGROUND

¶3      Brown was sentenced to the Montana State Prison ("MSP") on November 8, 1976, for several offenses. For most of his time at MSP, Brown was primarily in the high security area, known as the "High Side" of the prison. In March 2002, Brown, along with sixty-four other prisoners, filed *Quigg v. Slaughter*, Cause No. CDV 2002-175 ("Quigg"), in the Montana First Judicial District Court, which remains pending before that court. In *Quigg*, the plaintiffs allege that DOC has moved some of them to various regional or private prisons where treatment, training, and rehabilitation opportunities are not available. The plaintiffs seek declaratory relief to preclude DOC from transferring them to any prison other than MSP.

¶4      After Brown signed on as a plaintiff in *Quigg*, he came before the Parole Board for the first time in January 2003. At that time, he had been incarcerated for twenty-seven years, and had spent a total of about two months in the low security area, or "Low Side" of MSP. Brown was denied parole. The Parole Board apparently cited Brown's failure to complete

2

sex offender treatment as one reason for the denial. Sex offender treatment is apparently available only on the Low Side at MSP.

¶5    In June 2003, Brown was reclassified at MSP and sent to the Low Side where he could obtain sex offender treatment. A Unit Manager on the Low Side objected to Brown's classification, and his classification was "overridden" and he was returned to the High Side. While he was in the process of appealing that decision, Brown was transferred to the Crossroads Correctional Center ("CCC") in Shelby, Montana, where no sex offender treatment programs are available.

¶6    On March 5, 2004, Brown filed a *pro se* "Petition for Mandatory Injunctive Relief" in the Montana First Judicial District Court, Lewis and Clark County, under Cause No. ADV 2004-172, arguing that the transfer to CCC and denial of reclassification to Low Side denied his due process rights. Brown argued that he has a liberty interest in parole, but he cannot meet the requirement that he obtain sex offender treatment because DOC has kept him in locations where such treatment is unavailable. Brown requested that the court "mandatorily enjoin" DOC and order DOC to transfer him to the Low Side at MSP so that he could obtain the sex offender treatment required by the Parole Board.

¶7    On March 10, 2004, the District Court *sua sponte* dismissed Brown's petition with prejudice. The court concluded that Brown was barred by *res judicata* from raising his claims in Cause No. ADV 2004-172 because he was a named Plaintiff in CDV 2002-175, which the District Court concluded presented identical claims. From this dismissal, Brown timely appeals.

3

## STANDARD OF REVIEW

¶8 We review a district court's conclusions of law to determine whether its interpretation of the law is correct. *State v. Kennedy*, 2004 MT 53, ¶ 13, 320 Mont. 161, ¶ 13, 85 P.3d 1279, ¶ 13 (citation omitted).

## DISCUSSION

¶9 Did the District Court err when it dismissed Brown's petition for injunctive relief on the grounds that his claim was *res judicata*?

¶10 Brown argues that the District Court erred when it concluded that his petition was barred by *res judicata*. He points out that *Quigg* is still pending before the District Court and has not been resolved. He further argues that *Quigg* and the present case are distinguishable because--while both cases involve a legal question over DOC's authority to transfer an inmate from MSP to CCC, where no rehabilitative programs are available--*Quigg* does not demand the same relief as he seeks in the present case, nor does it involve a question of whether an inmate's liberty interest in parole is violated by transferring that inmate to a location where he is unable to participate in a treatment program which is required by the Parole Board for parole eligibility.

¶11 Brown maintains that the cases upon which the District Court relied in dismissing his case are distinguishable because of the lack of a final judgment in *Quigg,* and because the elements of *res judicata* have not been met as the subject matter of *Quigg* and the present action are not identical. Brown further explains that *Quigg* requests declaratory relief, while he seeks mandatory injunctive relief as a remedy, and that *Quigg* does not demand that any

CCC inmates be returned to MSP, while he personally requests this relief. He claims that *Quigg* does not allege any inmates are being irreparably injured when they are transferred to facilities other than MSP, while in the instant case, he alleges that he is being irreparably injured because he will be ineligible for parole for so long as he fails to obtain sex offender treatment, and he will be unable to obtain sex offender treatment for so long as DOC houses him in locations where such treatment is unavailable.

¶12 The State responds that the District Court correctly dismissed Brown's petition on the basis of *res judicata* because the parties, subject matter, and issues are the same as those pending in *Quigg*, or in the alternative, that the plaintiffs in *Quigg* could have brought these same issues. The State further argues that the District Court could have dismissed Brown's petition on the grounds that he failed to state a claim for relief as inmates do not have a liberty interest in remaining in any particular prison or custody classification. The State claims that, although Brown would like to differentiate the subject matter of his case and *Quigg* by claiming that, unlike the plaintiffs in *Quigg*, he will suffer irreparable injury if his prayer for relief is not granted, this is insufficient to make the two claims distinguishable. The State maintains that, simply because Brown is more specific in his current petition, the ultimate issue remains whether or not DOC has the authority to move inmates who are sentenced to MSP to facilities other than MSP.

¶13 The doctrine of *res judicata* provides that the parties to an action in which a judgment on the merits has been rendered, or their privies, are barred from relitigating the same cause of action in a second proceeding. *Audit Services, Inc. v. Anderson* (1984), 211 Mont. 323,

5

327, 684 P.2d 491, 493 (citation omitted). Four criteria must be met before a plea of *res judicata* can be sustained: the parties or their privies must be the same; the subject matter of the action must be the same; the issues must be the same and relate to the same subject matter; and the capacities of the persons must be the same in reference to the subject matter and to the issues between them. *Audit Services*, 211 Mont. at 327, 684 P.2d at 493 (citing *Smith v. County of Musselshell* (1970), 155 Mont. 376, 378, 472 P.2d 878, 880). However, and significantly, the primary requirement is that there *be* a judgment on the merits. There has been no such judgment entered in *Quigg*. Moreover, where two distinct causes of action exist, they may be sued on separately notwithstanding the fact that they arise from the same general course of events, and it makes no difference for purposes of *res judicata* that they might have been united in a single suit. *Audit Services*, 211 Mont. at 328-29, 684 P.2d at 494.

¶14     In the case at hand, the District Court's determination that Brown's claim is barred by *res judicata* was based upon the fact that *Quigg* is pending in a district court. As we stated in *Audit Services*, the parties to an action in which a judgment on the merits has been rendered cannot relitigate the same cause of action in a second proceeding. *Audit Services*, 211 Mont. at 327, 684 P.2d at 493. No judgment on the merits having been rendered in *Quigg*, Brown's case is not properly dismissed on *res judicata* grounds. This being dispositive, we need not reach a determination on whether the subject matter and issues of the two cases are identical.

**CONCLUSION**

6

¶15    For the foregoing reasons, we reverse the District Court's dismissal of Brown's petition and remand for further proceedings consistent with this Opinion.

/S/ PATRICIA O. COTTER

We Concur:

/S/ KARLA M. GRAY
/S/ JAMES C. NELSON
/S/ W. WILLIAM LEAPHART
/S/ JOHN WARNER
/S/ JIM RICE