**F I L E D**

PUBLISH

**June 20, 2005**

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

JAIMEE LEE MENA,

      Plaintiff-Appellant,

v.

SAFECO INSURANCE COMPANY
and GENERAL INSURANCE
COMPANY OF AMERICA,

      Defendants-Appellees.

No. 04-8022

---

**Appeal from the United States District Court**
**for the District of Wyoming**
**(D.C. No. 03-CV-1043-B)**

---

C. John Cotton, Cotton Law Office, Gillette, Wyoming for the Plaintiff-Appellant.

Judith Studer, Schwartz, Bon, Walker & Studer, LLC, Casper, Wyoming for the Defendants-Appellees.

---

Before **KELLY**, Circuit Judge, **McWILLIAMS**, Senior Circuit Judge, and **LUCERO**, Circuit Judge.

---

**LUCERO**, Circuit Judge.

---

      The case before us arises under our diversity jurisdiction. Jaimee Lee

Mena, the plaintiff below, filed a complaint against defendants General Insurance

Company of America and SAFECO Insurance Company ("Safeco"), arguing that her Safeco automobile insurance policy entitles her to aggregate or "stack" the underinsured motorists coverage under the policy. Mena was insured under a single policy covering three vehicles, and sought a declaratory judgment that would allow her to stack her underinsured motorists coverage for each vehicle to compensate for bodily injuries suffered in an automobile accident. After tendering the underinsured motorists limit for a single vehicle, Safeco denied additional coverage. On cross motions for summary judgment the district court denied Mena's claim of additional coverage and granted summary judgment to the defendants. Having reviewed the policy in accordance with Wyoming law, we agree with the district court and **AFFIRM** the grant of summary judgment to Safeco.

## I

Mena suffered serious injuries in an automobile accident while riding as a passenger in a vehicle operated by her son. She insured the vehicle in which she was riding, along with two other vehicles, under a single policy issued by Safeco. The policy provided coverage for bodily injury, medical payments, automobile damage, and losses involving uninsured and underinsured motorists. Under the policy's terms, Mena was eligible to recover (and has recovered) $25,000 in bodily injury liability. The policy also provides underinsured motorists coverage

of $100,000 per person for each of the three covered vehicles. Safeco has tendered $100,000 to Mena as payment pursuant to the underinsured motorists provision, bringing its total payment to $125,000 for the collision.

Mena sued Safeco in state court seeking a declaration that she is entitled to receive up to $300,000 in underinsured motorists coverage, representing $100,000 for each of the three vehicles covered by the policy. She also sought damages and attorney's fees. Following removal to federal court, both sides filed cross motions for summary judgment. The principal issue before the court was whether Mena was entitled to stack the underinsured motorists coverage on each of the three vehicles. After reviewing the policy, the court concluded that the policy unambiguously prohibits stacking underinsured motorists coverage, granted Safeco's motion for partial summary judgment, and dismissed the case with prejudice. Mena appeals.

**II**

We apply Wyoming law to the question of whether Mena is entitled to stack the underinsured motorists coverage on the three vehicles covered by the policy. Cooperman v. David, 214 F.3d 1162, 1164 (10th Cir. 2000) ("a federal court sitting in diversity must ascertain and apply state law to reach the result the Wyoming Supreme Court would reach if faced with the same question."). Our

review of Wyoming law and the policy's language leads us to conclude that she is not entitled to stack her underinsured motorists coverage.

**A**

The Wyoming Supreme Court has longstanding jurisprudence answering whether insureds are entitled to stack uninsured motorists coverage based on public policy gleaned from Wyoming's Uninsured Motor Vehicle Coverage Act, which requires carriers to make available uninsured motorists coverage to their insureds. However, the court has only recently confronted the issue of whether insureds are entitled to stack underinsured motorists coverage, an issue not addressed by Wyoming statute. The supreme court's first foray into the field of uninsured motorists coverage stacking came in Ramsour v. Grange Ins. Assoc., 541 P.2d 35 (Wyo. 1975). In Ramsour, the plaintiff was driving a rental car covered by a policy including an uninsured motorists limit when she collided with an uninsured motorist. Ramsour had a separate policy with a different insurance company that also contained uninsured motorists coverage. Although both policies contained "other insurance excess-escape clauses," Ramsour sued both insurers and claimed that she was entitled to payment of the total uninsured motorists limit under both policies. The court began by reviewing Wyoming public policy, which requires by statute all automobile insurance policies to provide insureds the option of purchasing uninsured motorists coverage. Because

"a premium has been paid for each of the endorsements and coverage has been issued," id. at 38, and because at least one insurance company would avoid providing such coverage if stacking were forbidden, the court concluded that enforcing the "escape clause" and limiting Ramsour to the limit contained in one policy would be "repugnant" to Wyoming public policy. Id. at 39.[1]

In Commercial Union Ins. Co. v. Stamper, 732 P.2d 534 (Wyo. 1987), the court confronted a related question, which it articulated as: "whether an insured, under a single automobile insurance policy encompassing several vehicles may 'stack' or 'pyramid' uninsured-motorists . . . provisions for recovery of injury and medical expenses sustained in an accident involving one of the covered vehicles." Id. at 534-35 (emphasis in original). The plaintiff had a single policy covering three vehicles, each with the same limit of uninsured motorists coverage. Reviewing the same uninsured motorists statute at issue in Ramsour, the court concluded that Stamper's coverage for a single vehicle under the policy "met the statutory requirement as a minimum coverage, and there is no stated statutory public policy requiring aggregating . . . ." Id. at 537. The court held that Ramsour was not controlling because Ramsour involved "aggregation of benefits found in separate insurance policies, whereas this case involves a single insurance

---

[1] We stress that, unlike the present case, Ramsour involved multiple policies.

policy." Id. at 538.  Because public policy did not require uninsured motorists "benefits in one policy to be aggregated in all cases where an insured has an unfortunate automobile accident with an uninsured motorist," the court turned "to the language of the insurance policy itself to establish the existence of any limitations of liability."  Id.  Reading Ramsour and Commercial Union together, it appears that the Wyoming Supreme Court treats inter-policy stacking quite differently from intra-policy stacking, and holds that public policy considerations informing rules governing the former do not necessarily establish rules applicable to the latter.

Wyoming's uninsured motorists jurisprudence guided the state supreme court when it confronted, for the first time, a case involving stacking of underinsured motorists provisions in Aaron v. State Farm Mut. Auto. Ins. Co., 34 P.3d 929 (Wyo. 2001).  In Aaron, plaintiffs "were the holders of five separate policies of motor vehicle insurance," they "paid a separate premium for [underinsured motorists] coverage in each of the policies," and they argued "that the policies could be 'stacked' as they were entitled to personal insurance protection provided by each of the five policies."  Id. at 930-31.  For the first time the court defined "stacking," which it described as "the phenomenon of insureds or claimants against them adding all available policies together to create a greater pool in order to satisfy their actual loss."  Id. at 931 n.1, quoting 12 Lee R. Russ

& Thomas F. Segalla, Couch on Insurance 3D, § 169:4 (1998).  Proceeding with that definition, the court first concluded that there was no "public policy that would prohibit the aggregation of coverage by an insured who has purchased multiple insurance policies," and, after reviewing Ramsour and Commercial Union, determined that "this court has generally approved the 'stacking' of multiple insurance coverages . . . ."  Id. at 932.

Based on these principles, the court established the rule that courts should deny "aggregation of uninsured or underinsured motorist coverage from separate policies for which separate premiums have been paid" only if the policies contain anti-stacking provisions detailed "clearly and unambiguously in terms that a lay-insured of ordinary intelligence could easily comprehend."  Id.  The court announced a presumption that "the payment of additional separate premiums . . . was intended to purchase additional 'stackable' coverage commensurate with the insured's damages."  Id. at 933.  Therefore, Aaron created a rule that where a plaintiff has paid separate premiums for separate policies containing underinsured motorists limits, underinsured motorists coverage will be stacked unless the policies contain clear and unambiguous anti-stacking provisions.

Contrary to the conclusion of the court below, the Aaron rule is inapplicable to this case.  By its terms, the rule applies to inter-policy stacking cases, and the Wyoming Supreme Court has determined that rules applying to

inter-policy stacking do not necessarily extend to intra-policy stacking. See id. at 933 n.5 ("in our decision in Commercial Union the court was careful to emphasize that the insured was attempting to stack multiple forms of coverage within a single insurance policy."). Additionally, the rule applies only in cases involving "separate policies for which separate premiums have been paid." Id. at 932 (emphasis added).

In this case, the record reveals that Mena pays a single premium for a single Safeco policy. The declaration sheet shows a charge for a "total premium for all vehicles" of $975.30. Under Wyoming law, it does not alter the analysis that the declaration sheet breaks down the total premium by vehicle, and then within each vehicle by form of coverage. See Commercial Union, 732 P.2d at 540 (rejecting plaintiff's argument that he paid separate premiums because, even though "an attached Fleet Schedule breaks down the premium to be paid by each vehicle under each provision, a total under each provision is arrived at in computing the total policy payments" and "[t]he declarations sheet shows a total premium of $16 for uninsured-motorists insurance"). We view this matter as an intra-policy stacking case involving the payment of a single premium. Therefore the Aaron rule does not apply.

Rather than presuming that the Safeco policy permits stacking absent clear and unambiguous anti-stacking language as would be required by Aaron, "we will

defer to the language of the insurance policy itself" to determine if it permits intra-policy stacking. Id. at 538. When interpreting the policy, we must adhere to the following tenets of insurance agreement construction established by the Wyoming Supreme Court: (1) words must be given their common and ordinary meaning, and courts may not torture policy language to create an ambiguity; (2) the parties' intention, ascertained from the policy language when viewed in the light of what the parties must reasonably have intended, receives primary consideration; (3) the policy must not be construed so strictly as to contradict the policy's general object; (4) courts may not rewrite lawful policy terms; (5) absent ambiguity, courts must enforce the policy according to its terms and not engage in construction; (6) if the policy is ambiguous, courts must construe the contract liberally in favor of the insured and strictly against the insurer. See Aaron, 34 P.3d at 933. Applying these canons of construction, and reviewing the grant of summary judgment de novo, viewing the evidence and drawing reasonable inferences in the light most favorable to the nonmoving party, we conclude that the policy at issue does not permit intra-policy stacking. See Cooperman, 214 F.3d at 1164 (discussing the standard of review).

**B**

The subject policy is divided into six parts pertaining to liability coverage, medical payments coverage, uninsured/underinsured motorists coverage, auto damage coverage, insured's duties after a loss, and general provisions. Part C, which concerns underinsured motorists coverage, contains a subsection entitled "Limit of Liability" and provides as follows:

> The limit of liability shown in the Declarations for "each person" for Uninsured/Underinsured Motorists Coverage is our maximum limit of liability for all damages including damages for care, loss of services . . . arising out of <u>bodily injury</u> sustained by any one person in any one accident.
> Subject to this limit for "each person," the limit of liability shown in the Declarations for "each accident" for Uninsured/Underinsured Motorists Coverage is our maximum limit of liability for all damages for <u>bodily injury</u> resulting from any one accident. This is the most we will pay regardless of the number of: . . . 3. Vehicles or premiums shown in the Declarations. (emphasis in original).

In the Declarations, the limit of liability shown for "each person" is $100,000. Part C unambiguously states that $100,000 is the maximum limit of underinsured motorists liability for all damages arising out of bodily injury sustained by any one person in any one accident, regardless of the number of vehicles or premiums shown in the Declarations. Complying with this provision, Safeco tendered $100,000 to Mena for damages arising out of the bodily injuries she suffered.

Mena contends, however, that the policy is ambiguous, and that construing it liberally in her favor, we should conclude that she is entitled to up to $300,000

- 10 -

in underinsured motorists coverage. She raises two arguments in support.[2] First,

she contends that Part F of the policy, containing general provisions, creates an

ambiguity with respect to Part C, and should leave us in doubt as to whether the

policy in fact authorizes intra-policy stacking of underinsured motorists coverage.

Part F provides:

> If this policy insures two or more autos or if any other auto insurance
> policy issued to you by us applies to the same accident, the maximum
> limit of our liability shall not exceed the highest limit applicable to
> any one auto.
> 1. This provision does not apply to Uninsured/Underinsured
> Motorists Coverage.

---

[2] Mena also argues that because the district court for the District of
Montana decided against Safeco in a case raising similar issues, res judicata and
collateral estoppel apply to this case. See Moore v. Safeco, 954 F. Supp. 209 (D.
Mont. 1997). The parties in the litigation before us are not identical to the parties
in Moore; therefore res judicata does not apply. See Brown v. Dep't of Corr., 108
P.3d 498, 500 (Mont. 2005) ("the parties or their privies must be the same" for res
judicata to apply). Moreover, because Moore applied Montana law to the policy
in question and we apply Wyoming law, the issues in the two cases are not
identical, thus making collateral estoppel inapplicable. Estate of Watkins v.
Hedman, Hileman & Lacosta, 91 P.3d 1264, 1272 (Mont. 2004) (collateral
estoppel requires that "the identical issue raised was previously decided in a prior
adjudication"). For the same reasons set forth in Montana state law, federal
common law would foreclose Mena's res judicata and collateral estoppel
arguments. See Sil-Flo, Inc. v. SFHC, Inc., 917 F.2d 1507, 1520 (10th Cir.
1990); but see Semtek Int'l Inc. v. Lockheed Martin Corp., 531 U.S. 497, 508
(2001) (holding that, when deciding what claim-preclusive effect to give a
judgment of a federal court sitting in diversity, the "federally prescribed rule of
decision [is] the law that would be applied by state courts in the State in which
the federal diversity court sits.").

Mena asserts that this language constitutes a clear anti-stacking provision that, by its terms, does not apply to underinsured motorists coverage. Although Safeco disputes that characterization, and explains the policy language differently, even accepting Mena's version, she has not shown that the policy in any way authorizes stacking of underinsured motorists coverage. Liberally construed in Mena's favor, this provision of Part F states that the maximum limit of liability for bodily injury or medical payment coverage is the highest limit applicable to any one auto, but that the provision does not apply to underinsured motorists coverage. Part F does not authorize, ambiguously or otherwise, stacking of underinsured motorists coverage; at most, it is an anti-stacking provision, applicable to both inter- and intra-policy stacking, that does not apply to uninsured or underinsured motorists coverage. Part C, however, contains clear and unambiguous anti-stacking language applying solely to underinsured and uninsured motorists coverage of multiple vehicles within the same policy. Part F leaves open whether stacking underinsured motorists coverage is forbidden with regard to intra-policy stacking; Part C answers that question unambiguously in the affirmative.

Secondly, Mena contends that when Part C refers to "[t]he limit of liability shown in the Declarations for 'each person' for Uninsured/Underinsured Motorists Coverage," it is ambiguous whether the language refers to the "each

person" limit for a single vehicle or to the sum of the three "each person" limits stacked together. On the declarations sheet, there is a column entitled "Limits" for each vehicle covered by the policy. For each of the vehicles, the limit for "Underinsured Motorists: Bodily Injury" is "$100,000 each person." It is clear that the "each person" limit of liability shown in the Declarations for underinsured motorists coverage is $100,000. Adopting Mena's view would require us to "torture" the policy's language. St. Paul Fire & Marine Ins. Co. v. Albany County Sch. Dist., 763 P.2d 1255, 1258 (Wyo. 1988) ("the language of an insurance policy will not be 'tortured' in order to create an ambiguity"). We are buttressed in our conclusion by the fact that Part C provides that the "each person" limit "is the most we will pay regardless of the number of . . . [v]ehicles or premiums shown in the Declarations." Such language would be absurd if the "each person" limit meant the combined coverage for all three vehicles.[3]

### III

The insurance policy at issue does not authorize intra-policy stacking of underinsured motorists coverage. We therefore **AFFIRM** the district court's

---

[3] Because Safeco did not unreasonably or without cause refuse to pay, or delay payment of, the full amount it owed Mena, the district court correctly dismissed the case with prejudice notwithstanding Mena's claim for attorney's fees. See State Farm Mut. Auto. Ins. Co. v. Shrader, 882 P.2d 813, 834-35 (Wyo. 1994).

order granting summary judgment to the defendants. We also **DENY** Appellant's

motion for certification of questions to the Wyoming Supreme Court.[4]

---

[4] Mena urges that we certify the following two questions: "(1) Is the presumption of stacking of underinsured coverages adopted in <u>Aaron v. State Farm</u>, 34 P.3d 929, 933 (Wyo. 2001) an irrebutable presumption?" and "(2) If the presumption is rebuttable, what evidentiary standards apply to a carrier's attempts to overcome the presumption?" Because the presumption established by <u>Aaron</u> does not apply to this case, the answers to these questions are irrelevant to our disposition of this appeal.