**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**August 29, 2018**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

VIKING INSURANCE COMPANY OF
WISCONSIN,

    Plaintiff Counter Defendant -
Appellee,

v.

SHERYL LEANN BAIZE, individually
and as legal guardian of Luke Bradford
Smith; JIM SMITH, individually,

    Defendants Counterclaimants -
Appellants,

and

MILES SUMNER,

    Defendant Cross Defendant.

No. 17-8074
(D.C. No. 1:15-CV-00151-SWS)
(D. Wyo.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **BACHARACH**, **PHILLIPS**, and **McHUGH**, Circuit Judges.
_____

[*] After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Sheryl Baize, as legal guardian for her son Luke Smith, appeals the district court's entry of default and default judgment in favor of Viking Insurance Co. on Viking's claim for declaratory relief. Ms. Baize and Jim Smith (Luke's father) also appeal the grant of summary judgment in Viking's favor on their counterclaims arising from Viking's actions in attempting to settle an insurance claim. We have jurisdiction under 28 U.S.C. § 1291 and affirm.

## I. BACKGROUND

Luke was a passenger in a pick-up being driven in southern Wyoming by Miles Sumner. Mr. Sumner fell asleep at the wheel, woke suddenly and overcorrected, causing the pick-up to veer off the highway and roll over. Luke was ejected and sustained severe injuries. Due to Luke's comatose state, Ms. Baize was appointed his legal guardian.

Viking had issued an automobile insurance policy (Policy) to Mr. Sumner. Viking attempted to offer Luke or his parents the Policy's limit of $25,000 per person under the provision for bodily injury. Ms. Baize, through counsel, asserted she was entitled to an additional $25,000 pursuant to the Policy's provision for underinsured-motorist coverage. The parties were unable to agree, so Viking filed the underlying interpleader action naming Luke and Mr. Sumner as defendants.[1] The parties filed various pleadings and motions, including Ms. Baize's challenge to personal jurisdiction and her later acceptance of service of process. The parties

---

[1] Mr. Sumner is not a party to this appeal.

2

eventually stipulated that Viking would file an amended petition to include the appropriate parties and reflect the correct case caption. After Viking did so, the defendants failed to file a timely responsive pleading, so the court clerk entered a default against Ms. Baize, as Luke's guardian, who then moved to set aside the default under Federal Rules of Civil Procedure 55(c) and 60(b). The district court denied the motion, evaluated Viking's position on the merits, and entered a default judgment on Viking's interpleader claim. Accordingly, the court ordered Viking to pay the $25,000 insurance proceeds into the court registry, and then ordered the court clerk to release the $25,000 to Ms. Baize, as Luke's guardian. This proceeding did not resolve the pending counterclaims that had been filed by Ms. Baize and Mr. Smith in their individual capacities.

Viking filed a motion for summary judgment on the pending counterclaims, which the district court granted. Final judgment was entered on September 11, 2017. Ms. Baize, individually and as Luke's guardian, and Mr. Smith filed a timely notice of appeal.

## II.    JURISDICTION

Ms. Baize and Mr. Smith contend that the federal courts do not have subject-matter jurisdiction over this case, even though their district-court filings asserted that the court had jurisdiction. We have an independent obligation to consider our own jurisdiction. *City of Colo. Springs v. Climax Molybdenum Co.*, 587 F.3d 1071, 1078-79 (10th Cir. 2009). The diversity-jurisdiction statute applies. "Under 28 U.S.C. § 1332, a party must show that complete diversity of citizenship

3

exists between the adverse parties and that the amount in controversy exceeds $75,000." *Symes v. Harris*, 472 F.3d 754, 758 (10th Cir. 2006). Here, complete diversity of citizenship is undisputed, but Ms. Baize and Mr. Smith claim the amount in controversy does not exceed $75,000.

In the amended petition for interpleader and declaratory relief, Viking asserted that Luke was entitled to $25,000 under the Policy's bodily-injury coverage provision. Luke's guardian claimed entitlement to an additional $25,000 under the Policy's underinsured-motorist coverage. In addition, Ms. Baize and Mr. Smith filed counterclaims on their own behalf against Viking for negligence, breach of contract, intentional and negligent infliction of emotional distress, knowing and reckless denial of claims without reasonable basis, and breach of the obligation of good faith and fair dealing. Although Ms. Baize and Mr. Smith did not initially make a specific monetary claim, they later characterized their counterclaims as compulsory and alleging an "amount in controversy in excess of $75,000," Aplt. App. at 198.

"The amount in controversy is ordinarily determined by the allegations of the complaint. . . ." *Laughlin v. Kmart Corp.*, 50 F.3d 871, 873 (10th Cir. 1995), *abrogated on other grounds by Dart Cherokee Basin Operating Co. v. Owens*, 135 S. Ct. 547 (2014). But defendants' counterclaims, which were compulsory, *see* Fed. R. Civ. P. 13(a)(1), and for damages in excess of $75,000, "would provide a sufficient independent basis for federal jurisdiction." *Geoffrey E. Macpherson, Ltd. v. Brinecell, Inc.*, 98 F.3d 1241, 1245 n.2 (10th Cir. 1996); *see also* 14AA Charles A. Wright et al., *Federal Practice and Procedure* § 3706 (4th ed.) (presenting the

4

argument when a plaintiff's complaint lacks the necessary jurisdictional amount, a defendant's compulsory counterclaim may supply the jurisdictional amount for plaintiff's claim without either party being disadvantaged thereby). Consequently, the federal courts have jurisdiction over this matter.

## III. ENTRY OF DEFAULT AND DEFAULT JUDGMENT

Ms. Baize, as Luke's guardian, asserts that the district court erred in entering default and a default judgment on Luke's claim of entitlement to the Policy's underinsured-motorist coverage. The district court chronicled the procedural progression of the case, including (1) Ms. Baize and Mr. Smith filed counterclaims, even though they were not yet named as parties; (2) they initially brought claims against other insurance companies, who also were not parties; and (3) the parties stipulated to amend the caption to name Ms. Baize as Luke's guardian and to include Ms. Baize and Mr. Smith as parties. Viking then amended its petition to reflect the correct parties and served Ms. Baize, as Luke's guardian, with the amended petition.

On July 8, 2016, over a month after a responsive pleading was due, Viking's counsel emailed defendants' counsel notifying them that no answer had been filed and requesting them to file an answer by July 15, 2016. On July 12, 2016, defendants' counsel responded, stating that the failure to file an answer "was indeed an oversight," and stating that an answer would be filed. Aplee. Supp. App. at 130. No answer was filed as of July 19, 2016, four days past the agreed-upon deadline, so Viking's counsel moved for entry of default, which the court clerk entered the next day. Viking also moved for a default judgment. On July 21, 2016, Ms. Baize,

5

individually and as Luke's guardian, and Mr. Smith filed an amended answer and counterclaims, and on July 27, 2016, they moved to vacate the clerk's entry of default. The district court denied the request to vacate the default and, after determining that the Policy did not provide underinsured-motorist coverage for Luke and that Luke had not presented any potentially meritorious defenses to Viking's claim, entered a default judgment in favor of Viking.

"We review a district court's entry of default judgment for an abuse of discretion." *Tripodi v. Welch*, 810 F.3d 761, 764 (10th Cir. 2016). Accordingly, "we will not overturn the court's decision without a clear showing that it manifests a clear error of judgment." *Id.* (ellipsis and internal quotation marks omitted). By defaulting, the defendant relieves the plaintiff "from having to prove the complaint's factual allegations." *Id.* at 765. But "even in default, a defendant is not prohibited from challenging the legal sufficiency of the admitted factual allegations. The judgment must be supported by a sufficient basis in the pleadings." *Id.*

The district court must make three determinations to set aside a default judgment under Rule 60(b): "(1) the moving party's culpable conduct did not cause the default; (2) the moving party has a meritorious defense; and (3) the non-moving party will not be prejudiced by setting aside the judgment." *United States v. Timbers Pres.*, 999 F.2d 452, 454 (10th Cir. 1993), *abrogated on other grounds by Degen v. United States*, 517 U.S. 820 (1996).

6

## A. Entry of default

Ms. Baize, acting as Luke's guardian, argues that the default should have been set aside because Wyoming seeks to avoid technical defects and Fed. R. Civ. P. 55(c) allows the court to set aside a default for "good cause." She complains that Viking failed to notify three of her four attorneys, and waited only two business days after reminding her attorney that an answer was past due before requesting entry of default. She contends that the failure to file an answer to the amended petition was justified because the amended petition was substantively the same as the original petition.

The district court determined that Ms. Baize failed to demonstrate good cause for setting aside the default considering that (1) the answer to the amended complaint was over a month late; (2) Viking's counsel put her counsel on notice; (3) Ms. Baize's counsel should have realized that some action was required, particularly because the case had not progressed for over two months and her responsive pleading affirmatively sought relief by including crossclaims and counterclaims; and (4) even if Ms. Baize's counsel believed no response was due, he stated an intention to file a responsive pleading and indicated that his failure to do so in a timely fashion was an oversight.

The court acknowledged Ms. Baize's citation to *M & A Constr. Corp. v. Akzo Nobel Coatings, Inc.*, 936 P.2d 451, 455 (Wyo. 1997), wherein the Wyoming Supreme Court concluded that the defendant's failure to file an answer to the amended complaint was the result of mistake and excusable neglect because the

7

defendant had otherwise defended the case by filing a motion for summary judgment and believed the only change to the amended complaint was the plaintiff's name. But the district court found this case to be factually distinguishable given (1) Ms. Baize's initial challenge to personal jurisdiction; (2) her later acceptance of service of the amended petition; (3) the delay between acceptance of service and Viking's counsel's notice that no answer to the amended petition had been filed; (4) Ms. Baize's counsel's response that the failure to file was an oversight, rather than a misunderstanding; and (5) Viking's counsel's further notice that an answer was overdue.

We conclude that the district court did not abuse its discretion in denying Ms. Baize's request to set aside the default. The court's reasoning does not show a clear error of judgment. And as the district court noted, although default judgment is disfavored, it is available as a sanction for late filings. *See Vanasse v. Ramsay*, 847 P.2d 993, 1000 (Wyo. 1993). Moreover, the default judgment remedy protects the diligent party against "interminable delay and continued uncertainty [and serves as] a deterrent to those parties who choose delay as part of their litigative strategy." *Id.* (internal quotation marks omitted). The district court found Ms. Baize's default to be "the result of counsel's unexplained and inexcusable culpable conduct." Aplt. App. at 169. The Supreme Court has long held that litigants are to be held accountable for the acts and omissions of their attorneys. *Link v. Wabash R. Co.*, 370 U.S. 626, 633-34 (1962).

8

## B.     Default Judgment

We turn to Ms. Baize's challenge to the default judgment to determine whether it is supported by a sufficient basis in the pleadings. *See Tripodi*, 810 F.3d at 764. The overarching issue is whether Luke was entitled to a $25,000 payment under the underinsured-motorist provision. There is no dispute that he was entitled to the $25,000 coverage under the provision for bodily injury. We apply Wyoming state law to this diversity action concerning an insurance contract made in Wyoming that was to be performed there. *Wyo. Farm Bureau Mut. Ins. Co. v. State Farm Mut. Auto. Ins. Co.*, 467 F.2d 990, 992 (10th Cir. 1972).

The underinsured-motorist provision provides, as relevant here:

**We** will pay damages for **bodily injury** which an **insured person** is legally entitled to recover from the owner or operator of an **underinsured motor vehicle**. The **bodily injury** must be caused by a **car accident** and result from the ownership, maintenance or use of an **underinsured motor vehicle**.
* * *

As used in this Part,

(1)  "**Insured Person**" means:

(A)  **You**.

(B)  Any other person **occupying your insured car** with **your** permission.

(C)  Any person for damages that person is entitled to recover because of **bodily injury** to **you** or another occupant of **your car**.

* * *

(3)  "**Underinsured motor vehicle**" means a **motor vehicle** which is insured by a liability bond or a policy at the time of the accident

9

providing bodily injury liability insufficient to compensate fully an insured person.

> (4) "**Underinsured motor vehicle**" does not mean a vehicle:
>
>> (A) Owned by or furnished or available for the regular use of **you** or a **relative** to the extent that the limits of liability for this coverage exceed the minimum limits of bodily injury liability specified in the Wyoming Safety Responsibility Act.

* * *

Aplt. App. at 80.

The Policy also includes the following anti-stacking provision:

> Any amounts payable to an insured person will be reduced by:
>
> (1) Any payments made by or on behalf of the owner of operator of the **underinsured motor vehicle**, or any other person or organization which may be legally liable.
>
> (2) Any amount paid or payable for the same expenses under Part I – Liability Coverage, Part II – Medical Payments Coverage or Part III – Uninsured Motorist Coverage.
>
> (3) Any payments made or payable because of **bodily injury** under any workers' compensation law or disability benefits law or similar law.

*Id.* at 81.

The Policy refers to "you" as Mr. Sumner and "we" as Viking. *See id.* at 83 (defining "we" as the insurance company and "you" as the insured). The liability-coverage provision and the underinsured-motorist provision each have a $25,000 per person limit and $50,000 per accident limit.

The Policy does not provide underinsured-motorist coverage to Luke because it expressly states that it is not applicable to a vehicle owned by Mr. Sumner. Here, the single-car accident involved a vehicle owned by "you," meaning Mr. Sumner.

10

In addition, under the anti-stacking provision, even if Luke were entitled to a $25,000 underinsured-motorist payment, such payment would be reduced by the $25,000 bodily-injury coverage.

Ms. Baize argues that the Policy's provisions concerning underinsured motor vehicles are confusing and ambiguous.[2]  First, she contends that the definition of an underinsured motor vehicle is confusing because the definition is stated in the negative:  "*does not* mean a vehicle . . . ," Aplt. App. at 80 (emphasis added).  We disagree.  The statement of what the Policy does not cover does not render the policy language ambiguous.

Ms. Baize further takes issue with an allegation in the original petition that "[t]he limit of the [underinsured-motorist coverage] is equal to and does not exceed the minimum limits of the Wyoming Safety Responsibility Act [Act]."  Aplt. Opening Br. at 26 (quoting Aplt. App. at 15) (emphasis omitted); *see also* Aplt. App. at 72 (amended petition including identical language).  She points out that the Policy limits the coverage "to the extent that the limits of liability for this coverage *exceed* the minimum limits" specified in the Act.  *Id.* at 80 (emphasis added).  Thus, she

---

[2] Viking contends that Ms. Baize and Mr. Smith did not present these arguments to the district court and therefore they should not be considered for the first time on appeal.  *See Tele-Commc'ns, Inc. v. CIR*, 104 F.3d 1229, 1232 (10th Cir. 1997).  But as Ms. Baize and Mr. Smith point out, the district court resolved the issue of Policy interpretation sua sponte when deciding that a default judgment was appropriate.  Consequently, we will consider these legal arguments.  *See Daigle v. Shell Oil Co.*, 972 F.2d 1527, 1539 (10th Cir. 1992) (stating reviewing court may depart from the general waiver rule, particularly when presented with a strictly legal question).

11

argues that because "equal to" does not mean "exceeds," the Policy is confusing. But the allegation in the complaint does not change the plain language of the Policy and therefore does not make it ambiguous.

Ms. Baize also contends that the Policy's anti-stacking provision does not apply because Mr. Sumner paid for both uninsured and underinsured motor vehicle coverage. She attempts to invoke the "rule that where a [policyholder] has paid separate premiums for separate policies containing underinsured motorists limits, underinsured motorists coverage will be stacked unless the policies contain clear and unambiguous anti-stacking provisions." *Mena v. Safeco Ins. Co.*, 412 F.3d 1159, 1163 (10th Cir. 2005) (citing *Aaron v. State Farm Mut. Auto. Ins. Co.*, 34 P.3d 929, 932-33 (Wyo. 2001)). But Mr. Sumner's payment for both uninsured and underinsured coverage does not bring this case within the *Aaron* rule because the rule applies to inter-policy stacking cases, and not necessarily to intra-policy stacking provisions. Here, only one policy is involved. Even though the Policy covers two vehicles owned by Mr. Sumner and "breaks down the total premium by vehicle, and then within each vehicle by form of coverage," the inter-policy anti-stacking rule does not apply. *Id.*; *see* Aplt. App. at 20 (identifying vehicles covered by the Policy and premiums attributed to each type of coverage). Therefore, "we will defer to the language of the insurance policy itself to determine if it permits intra-policy stacking." *Mena*, 412 F.3d at 1163 (internal quotation marks omitted).

Ms. Baize argues that the anti-stacking provision is ambiguous and is "not even labeled as such." Aplt. Opening Br. at 32. She cites no authority for a

12

requirement that an anti-stacking provision be so labeled, and she has not demonstrated that under the applicable "tenets of insurance agreement construction established by the Wyoming Supreme Court," *Mena* 412 F.3d at 1163, the Policy permits intra-policy stacking. We agree with the district court that the "intra-policy anti-stacking provision expressly reduces the amount recoverable by [Luke]." Aplt. App. at 168.

We further agree with the district court that Ms. Baize failed to present a meritorious defense to Viking's claim that it owed no more than $25,000 to Luke under the Policy. Ms. Baize does not challenge the district court's ruling that her affirmative defenses were without merit, so she has waived any challenge. *See COPE v. Kan. State Bd. of Educ.*, 821 F.3d 1215, 1223 (10th Cir. 2016) ("Appellants do not raise this argument in their opening brief, and so it is waived."). We affirm the entry of default and default judgment against Ms. Baize, as Luke's guardian, and in favor of Viking.

## IV.   SUMMARY JUDGMENT

Ms. Baize and Mr. Smith appeal the entry of summary judgment on their counterclaims brought in their individual capacities for negligence and breach of the obligation of good faith and fair dealing. Their opening brief does not challenge the summary judgment on their counterclaims for breach of contract, intentional and negligent infliction of emotional distress, and knowing and reckless denial of claims without reasonable basis, so they have waived any challenge to those counterclaims. *See id.*

13

"This diversity action is governed by [Wyoming's] substantive . . . law, but we are governed by federal law in determining the propriety of the district court's grant of summary judgment." *Eck v. Parke, Davis & Co.*, 256 F.3d 1013, 1016 (10th Cir. 2001). We review de novo the entry of summary judgment and draw all reasonable inferences in the nonmovants' favor. *Id.*

Ms. Baize and Mr. Smith alleged that Viking was negligent in investigating the accident and in informing them of the benefits available to Luke under the Policy. They further alleged that Viking violated its obligation to deal with them fairly and in good faith because in attempting to settle Luke's claim following the accident, Viking's representatives misrepresented the benefits available and harassed Ms. Baize and Mr. Smith in order to get them to settle.

To maintain a negligence claim, Ms. Baize and Mr. Smith must show, among other things, that Viking owed them a duty to conform to a specified standard of care. *RB, Jr. ex rel. Brown v. Big Horn Cty. Sch. Dist. No. 3*, 2017 WY 13, ⁋ 13, 388 P.3d 542, 546-47 (Wyo. 2017). The existence of such a duty is a question of law, "and absent a duty, there is no liability." *Killian v. Caza Drilling, Inc.*, 2006 WY 42, ⁋ 18, 131 P.3d 975, 979 (Wyo. 2006) (internal quotation marks omitted). An insurer owes no duty of good faith and fair dealing to a third-party claimant, such as Ms. Baize and Mr. Smith. *Herrig v. Herrig*, 844 P.2d 487, 491 (Wyo. 1992).

On appeal, Ms. Baize and Mr. Smith conflate their claims of negligence and breach of the obligation of good faith. They argue that Viking owed them a duty of care because they were acting on behalf of their disabled son. But they brought their

counterclaims in their individual capacities, not on behalf of Luke, so they have not established they were owed a duty under either theory.

Nevertheless, they assert that "[i]n Wyoming, a duty may arise . . . 'when the relationship of the parties is such that the law imposes an obligation on the defendant to act reasonably for the protection of the plaintiff.'" Aplt. Opening Br. at 22 (quoting *Killian*, 2006 WY 42, at ⁋ 8, 131 P.3d at 980). In *Killian*, the Wyoming Supreme Court discussed the factors to be considered in deciding "whether to adopt a particular tort duty." 2006 WY 42, at ⁋ 8, 131 P.3d at 980. Ms. Baize and Mr. Smith do not attempt to show that Viking owed them a tort duty and we decline to consider whether Wyoming would recognize any such duty.

Ms. Baize and Mr. Smith's reliance on *McCullough v. Golden Rule Ins. Co.*, 789 P.2d 855 (1990), is misplaced. There, the Wyoming Supreme Court "recognize[d] the existence of the independent tort for violation of a duty of good faith and fair dealing in insurance policy application *by the carrier to its insured*." 789 P.2d at 858 (emphasis added). Ms. Baize and Mr. Smith did not apply for or enter into an insurance contract with Viking. Therefore, Viking did not owe them a duty of good faith and fair dealing.[3]

---

[3] Ms. Baize and Mr. Smith claim that the Policy and the police report of the accident were not properly authenticated, and thus were inadmissible. But even if the documents were inaccurate or even false, that would not change the outcome because Viking owed no duty to Ms. Baize or Mr. Smith. They also argue that the district court failed to construe the facts in their favor, but they have identified no such facts.

Ms. Baize and Mr. Smith argue that Viking is liable to them for its claims settlement practices under the Wyoming Unfair Trade Practices Act, Wyo. Stat. § 26-13-124.  But the Act does not provide a private cause of action for unfair claim settlement practices.  *See Julian v. N.H. Ins. Co.*, 694 F. Supp. 1530, 1533 (D. Wyo. 1988).

Ms. Baize and Mr. Smith further complain that the district court entered summary judgment before any discovery was completed.  The record reflects, however, that they did not request discovery or comply with Fed. R. Civ. P. 56(d).  "To obtain relief under Rule 56(d), the movant must submit an affidavit (1) identifying the probable facts that are unavailable, (2) stating why these facts cannot be presented without additional time, (3) identifying past steps to obtain evidence of these facts, and (4) stating how additional time would allow for rebuttal of the adversary's argument for summary judgment."  *Cerveny v. Aventis, Inc.*, 855 F.3d 1091, 1100 (10th Cir. 2017).  Thus, the district court did not abuse its discretion by entering summary judgment without discovery.  *See id.* (reviewing district court's refusal to allow discovery for abuse of discretion).

## V.    ERIE DOCTRINE

Finally, relying on *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938), Ms. Baize and Mr. Smith contend that the district court "failed to follow both the [S]tate of Wyoming's legislative enactments and the holdings of the Wyoming Supreme Court in reaching its decisions."  Aplt. Opening Br. at 34.  As discussed above, the district court correctly applied Wyoming law.

16

## VI. CONCLUSION

We AFFIRM the district court's judgment in favor of Viking.

Entered for the Court


Carolyn B. McHugh
Circuit Judge